**J & J MARINE, INC. and Fred B. Johnson, Appellants,**

v.

**Ha Van LE and Bay V. Nguyen, Appellees.**

No. 13–98–336–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 10, 1998.

F. E. Billings, Billings & Solomon, Houston, for Appellants.

Isidro O. Castanon, Allen Stein Powers, Durbin & Hunnicutt PC, Palacios, William L. Powers, Plunkett, Gibson & Allen, San Antonio, for Appellees.

Before Justices HINOJOSA, YAÑEZ and RODRIGUEZ.

## OPINION

HINOJOSA, Justice.

Appellees, Ha Van Le and Bay V. Nguyen, sued appellants, J & J Marine, Inc. ("J & J") and Fred B. Johnson, for negligence, breach of contract, breach of fiduciary duty, breach of the Uniform Commercial Code, fraud, and misrepresentation/violations of the Texas Deceptive Trade Practices—Consumer Protection Act. Appellants filed a special appearance, which the trial court denied. This is an interlocutory appeal from the trial court's order denying appellants' special appearance.[1] We reverse the trial court's order and dismiss this case for lack of personal jurisdiction.

A. THE TRIAL COURT'S FINDINGS OF FACT

The trial court found that on February 11, 1995, appellees entered into a written contract; appellants agreed to construct a shrimp boat and appellees agreed to pay the purchase price of $480,000. Appellees are residents of Palacios, Matagorda County, Texas. Johnson, a citizen of Alabama, is the president and sole shareholder of J & J and SEE, Inc.,[2] both Alabama corporations. Johnson does business as J & J and SEE, Inc. Appellants knew appellees were Texas residents and that the vessel would be moored in Palacios. Appellees have experi-

---

1. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.1998).

2. Not a party to this cause of action.

enced numerous problems with the vessel, including defective paint, since delivery.

Appellants have constructed seven shrimp boats, including the one at issue, for Texas residents. Total value of these vessels is approximately $3.5 million. J & J's annual revenue is approximately $6 million. The value of appellees' vessel was approximately ten percent of J & J's annual revenue. Six of the vessels built for Texas residents, including the one at issue, have Palacios as their hailing port. At least three owners of these vessels, including appellees, have experienced problems with defective paint. One other owner has a suit pending before the trial court against appellants. SEE, Inc. sold electronic equipment to at least five vessels, similar to the one at issue, which hail from the port at Palacios. SEE, Inc. sells electronic equipment to J & J to be placed on shrimp boats. The average cost for this equipment is $12,000. For every vessel constructed by appellants, an "Application for Admeasurement" must be submitted to the American Bureau of Shipping, located in Houston, Texas. Michael Johnson,[3] J & J's vice-president, submitted the application for appellees' vessel.

Thuy Vu, a Palacios resident, received one telephone call from appellants asking whether she was interested in purchasing vessels appellants had available. Tuyen Nguyen, a Palacios resident, was involved in negotiations for two vessels with Johnson. These negotiations were for individuals with whom Tuyen was associated. These negotiations involved the sale price and were done by telephone either from Tuyen's office or Johnson's office in Alabama.

The trial court concluded the above facts established substantial activities and/or connections that were continuously, systematically, and purposefully directed by appellants toward Texas, and that a substantial connection between Texas and appellants arose from this conduct. The court further concluded that asserting general personal jurisdiction over appellants would comport with fair play and substantial justice because the burden of prosecuting appellants in Alabama would be greater for appellees than the burden of defending this claim in Texas would be on appellants, and that any potential clash of laws could be accommodated by Texas choice of law rules. In addition, the court reasoned Texas, particularly Matagorda County, had a manifest interest in providing an effective means of redress for its residents, especially because several individuals have the same complaints.

### B. OTHER RELEVANT INFORMATION

Negotiations for the construction of the vessel at issue occurred in Alabama at the instigation of the appellees. The parties executed the contract in Bayou La Batre, Alabama. According to the terms of the contract, the vessel was constructed at J & J's shipyard in Bayou La Batre. Payment for the vessel was to be made by: (1) cash, (2) cashier's check, (3) certified check issued by a banking institution in Mobile, Alabama, or (4) bankwire to J & J's bank account in Mobile. Appellees took delivery of the boat at J & J's dock at Bayou La Batre. J & J's construction lien was secured pursuant to section 35–11–60 of the Code of Alabama. In addition, J & J received a security interest in the vessel under the Uniform Commercial Code of Alabama. Appellees could choose which U.S. Coast Guard Documentation Office would document the vessel as a United States vessel. Any necessary warranty work would, if practical, be performed at J & J's shipyard. All contract disputes were to be arbitrated by the American Arbitration Association and conducted in Mobile. Although the "Application for Admeasurement" was submitted in Houston, the admeasuring was actually done at J & J's shipyard in Alabama. In the contract, Le's address was listed as Palacios, Texas. The "Application for Admeasurement" and the Coast Guard's "Certificate of Documentation" list the vessel's hailing port as New Orleans, Louisiana and Le's address as Gretna, Louisiana.

After appellees accepted delivery of the vessel, defects in the construction and design became evident. These defects allegedly included faulty hull painting as well as defective engine design, installation, assembly, and

---

**3.** Not a party to this cause of action and no longer a J & J employee.

welding. Although appellees made demands, appellants have not performed the requested repairs. As a result, appellees brought this cause of action to which appellants filed a special appearance. Appellants then removed the case to federal court. A motion to remand was granted when appellees stipulated that damages did not exceed $75,000. After remand, the trial court heard and denied appellants' special appearance, resulting in this appeal. The trial court's findings of fact and conclusions of law are part of the record.

### C. DUE PROCESS

In their first and second issues, appellants contend the trial court erred in denying their special appearance. Appellants question whether the trial court's assertion of personal jurisdiction over appellants is consistent with due process requirements. Specifically, appellants ask us to consider whether they met their burden to negate all bases of jurisdiction. In the alternative, appellants question whether traditional notions of fair play and substantial justice would be offended by the trial court's assertion of personal jurisdiction over them.

 A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM.CODE § 17.042 (Vernon 1997); *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). The long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant doing business in Texas. TEX. CIV. PRAC. & REM.CODE § 17.042. In addition to a discrete list of activities that constitute doing business in Texas, the statute provides that "other acts" by a nonresident can satisfy the requirement. *Id.; CSR Ltd.*, 925 S.W.2d at 594; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). The Texas Supreme Court has repeatedly interpreted this broad

statutory language "to reach as far as the federal constitutional requirements of due process will allow." *CSR Ltd.*, 925 S.W.2d at 594 (quoting *Guardian Royal*, 815 S.W.2d at 226); *see also U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977). Consequently, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *CSR Ltd.*, 925 S.W.2d at 594; *see Guardian Royal*, 815 S.W.2d at 226.

 In order to comply with the Texas long-arm statute and the federal constitutional requirements of due process, a plaintiff must initially show that the defendant has established "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772 (Tex.1995); *In re S.A.V.*, 837 S.W.2d 80, 85 (Tex.1992); *Guardian Royal*, 815 S.W.2d at 230; *Schroeder v. Valdez*, 941 S.W.2d 312, 314 (Tex.App.—Corpus Christi 1997, no writ). There must be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. *S.A.V.*, 837 S.W.2d at 85; *Guardian Royal*, 815 S.W.2d at 230; *Schroeder*, 941 S.W.2d at 314. A nonresident defendant purposefully availing itself of the privileges and benefits of conducting business in Texas has sufficient contacts to confer personal jurisdiction. *CSR Ltd.*, 925 S.W.2d at 594; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

 A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *CSR Ltd.*, 925 S.W.2d at 594. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *CSR Ltd.*, 925 S.W.2d at 595; *National Indus. Sand Ass'n*, 897 S.W.2d at 772; *S.A.V.*, 837 S.W.2d at 85; *Guardian Royal*, 815 S.W.2d at 227; *Schroeder*, 941 S.W.2d at 314. The contact must have resulted from the nonresident defendant's purposeful conduct and not the unilateral activity of the

plaintiffs. *Guardian Royal,* 815 S.W.2d at 227; *see Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868. The defendant's activities must have been "purposefully directed" to the forum, and the litigation must result from injuries arising from or relating to those activities. *Guardian Royal,* 815 S.W.2d at 228; *Vosko v. Chase Manhattan Bank, N.A.,* 909 S.W.2d 95, 99 (Tex.App.—Houston [14th Dist.] 1995, writ denied). When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Guardian Royal,* 815 S.W.2d at 228.

■ When general jurisdiction is alleged, there must be continuous and systematic contacts between the nonresident defendant and Texas. *CSR Ltd.,* 925 S.W.2d at 594; *S.A.V.,* 837 S.W.2d at 85; *Guardian Royal,* 815 S.W.2d at 228; *Schroeder,* 941 S.W.2d at 314. Such contacts would permit Texas courts to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the state. *CSR Ltd.,* 925 S.W.2d at 594; *National Indus. Sand Ass'n,* 897 S.W.2d at 772; *see Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). General jurisdiction requires a showing of substantial activities by the nonresident defendant in Texas, a more demanding minimum contacts analysis than for specific jurisdiction. *CSR Ltd.,* 925 S.W.2d at 594; *S.A.V.,* 837 S.W.2d at 85; *Guardian Royal,* 815 S.W.2d at 228; *Schroeder,* 941 S.W.2d at 314.

■ In addition to "minimum contacts," due process also requires that the assertion of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *National Indus. Sand Ass'n,* 897 S.W.2d at 772; *S.A.V.,* 837 S.W.2d at 85; *Guardian Royal,* 815 S.W.2d at 231; *Juarez v. United Parcel Serv. de Mex. S.A. de C.V.,* 933 S.W.2d 281, 284 (Tex.App.—Corpus Christi 1996, no writ). The following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the

plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi,* 480 U.S. at 115, 107 S.Ct. 1026; *Guardian Royal,* 815 S.W.2d at 231; *Juarez,* 933 S.W.2d at 284.

### D. Standard of Review

■ On appeal from a special appearance, we review all the evidence in the record. *Vosko,* 909 S.W.2d at 99; *General Elec. Co. v. Brown & Ross Int'l,* 804 S.W.2d 527, 529–30 (Tex.App.—Houston [1st Dist.] 1990, writ denied). To sustain a special appearance, the nonresident defendant must negate all bases of personal jurisdiction. *C.S.R. Ltd.,* 925 S.W.2d at 596.

■ Existence of personal jurisdiction is a question of law, but proper exercise of that jurisdiction must sometimes be preceded by the resolution of underlying factual disputes. The standard of review to determine the appropriateness of the trial court's resolution of those facts is an ordinary sufficiency of the evidence review. *Conner v. ContiCarriers and Terminals, Inc.,* 944 S.W.2d 405, 411 (Tex.App.—Houston [14th Dist.] 1997, no writ); *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied) (conducting factual sufficiency review). We must consider all the evidence that was before the trial court, including the pleadings, any stipulations, affidavits and exhibits, the results of discovery, and any oral testimony. *Conner,* 944 S.W.2d at 411; *Vosko,* 909 S.W.2d at 99; *McCulley Fine Arts Gallery, Inc. v. X Partners,* 860 S.W.2d 473, 480 (Tex.App.—El Paso 1993, no writ).

■ Although the trial court's findings of fact have the same force and dignity as a jury's verdict, *see Taiwan Shrimp Farm Village Ass'n v. U.S.A. Shrimp Dev., Inc.,* 915 S.W.2d 61, 70 (Tex.App.—Corpus Christi 1996, writ denied), they are not conclusive when a complete reporter's record is presented on appeal. *See Tucker v. Tucker,* 908 S.W.2d 530, 532 (Tex.App.—San Antonio

1995, writ denied). We may not disregard findings of fact if the record contains some evidence of probative value from which inferences may be drawn, or unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *Al–Turki v. Taher,* 958 S.W.2d 258, 260 (Tex. App.—Eastland 1997, pet. denied); *De Prins v. Van Damme,* 953 S.W.2d 7, 13 (Tex.App.—Tyler 1997, pet. denied). We review the trial court's conclusions of law for correctness. *Ashcraft v. Lookadoo,* 952 S.W.2d 907, 910 (Tex.App.—Dallas 1997, pet. denied).

### E. APPLICATION

#### 1. *Specific Jurisdiction*

▇▇ In the instant case, no specific conduct giving rise to appellees' causes of action is alleged to have occurred in Texas. Appellees' complaints concern faulty construction, painting, and welding of the vessel as well as misrepresentations in and breach of the contract. The evidence reflects the vessel, in its entirety, was built in Alabama pursuant to a contract negotiated and executed in Alabama. The parties do not dispute that Johnson is an Alabama resident and that J & J is an Alabama corporation with its sole place of business in Alabama. As no specific Texas conduct was alleged, proof that the appellants are non-residents is sufficient to prevent a Texas court's assertion of specific jurisdiction over appellants. *See Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 437–38 (Tex. 1982); *Reyes v. Marine Drilling Co., Inc.,* 944 S.W.2d 401, 405 (Tex.App.—Houston [14th Dist.] 1997, no writ); *Hotel Partners,* 847 S.W.2d at 633.

#### 2. *General Jurisdiction*

▇▇ To determine if the trial court could assert general jurisdiction over appellants, we must consider what contacts, if any, appellants have had with Texas. We then consider whether the contacts were continuous and systematic and whether the contacts were substantial.

The record reflects that J & J constructed seven vessels, including the one at issue, for Texas residents. J & J has an annual income of approximately $6 million derived solely from the construction of shrimp boats, similar to the one at issue, for customers along the gulf coast of the United States.

Johnson, a resident of Alabama, is the president and sole stockholder of J & J. He is also the president and sole stockholder of another Alabama corporation, SEE, Inc., which provides electronic equipment for boats. At least five Texas shrimp boats are equipped with electronics from SEE, Inc. The two corporations keep separate books that are maintained by separate bookkeepers. No money is transferred between the companies. Johnson is employed by both corporations, but he receives no income from J & J.

After delivery of the seven shrimp boats in Alabama, the owners moved them to Texas ports. Although appellants knew the owners were Texas citizens and that the boats would likely operate out of Texas, nothing in the record indicates the vessels were specially constructed for use in Texas. The average cost of these vessels was approximately $500,000 each. At least three of these vessels, including the one at issue, allegedly developed paint problems.

Although negotiations for all boats were conducted in Alabama, some negotiations for two vessels were conducted by telephone between Tuyen Nguyen in Texas and Johnson's office in Alabama. Tuyen referred the persons who wanted to buy the vessels to J & J and co-signed the loan papers for the two vessels. He stated that during at least seventy percent of the conversations, the buyers were present in Johnson's office in Alabama for the negotiations. Tuyen was not sure where the buyers were during the rest of the telephone conversations. Johnson testified that the buyers were always present during these telephone conversations so Tuyen could clarify the discussions for them. Tuyen co-signed the loan papers in Texas and mailed them to Alabama, but neither J & J nor Johnson were the lenders.

Thuy Vu testified she had two telephone conversations with Johnson approximately two years prior to her deposition. During one telephone call, initiated by Johnson, Vu recalled being asked if she knew anyone that wanted to buy a boat. The call lasted five or

ten minutes. In the second telephone call, Vu called Johnson to complain about some electronic equipment supplied by SEE, Inc. Michael Johnson, J & J's former vice-president, visited Palacios, Texas one time. The record reflects, however, that the visit was not associated with J & J business.

Evidence was presented that J & J submitted applications for admeasurement to the American Bureau of Shipping's national office which has been located in Houston, Texas since approximately 1995. Although the applications were submitted in Houston, the admeasurements were performed in Alabama at J & J's shipyard.

The trial court found the above-described conduct to be substantial activities purposefully directed at the state of Texas. We disagree.

The above-described conduct cannot be considered continuous and systematic contacts with Texas, but is, for the most part, fortuitous. Neither appellant is authorized to do business in Texas. They are not required to have an agent in Texas for service of process. They do not own or lease Texas real property, and they pay no Texas taxes. No contract for construction of vessels has ever been executed in Texas or required any of the work to be performed in Texas. Appellants do not solicit work or employees in Texas. They do not advertise in any medium intended to reach Texas. Appellants have had no Texas office, nor have they based an officer, agent, representative, or employee in Texas. They have no Texas bank account.

Appellees argue that appellants established sufficient minimum contacts with Texas because they constructed seven shrimp boats, worth $3.5 million, for Texas residents. They cite *Design Info. Sys. v. Feith Sys. & Software, Inc.*, 801 S.W.2d 569 (Tex.App.— Fort Worth 1990), *aff'd in part and rev'd in part on other grounds*, 813 S.W.2d 481 (Tex. 1991), as authority for this argument. We do not find this case controlling.

In *Design Info. Sys.*, Texas residents ordered computer software by telephone from a non-resident company that had approximately twenty-five other Texas customers. The nonresident corporation advertised na-

tionally, attended trade shows around the country, and delivered its product to Texas customers in Texas. *Id.* at 570.

In the case before us, the Texas owners initiated contact by appearing at J & J's offices in Alabama. Appellants neither advertised through any media seen by the Texas owners nor solicited their business in Texas. The shrimp boats were delivered in Alabama, and appellants did not control where the vessels subsequently docked. Nothing indicates the vessels were specially built for use in Texas. Payments were made in Alabama for work wholly performed in Alabama. The owners' unilateral acts of contacting appellants for shrimp boats and then moving them to Texas will not provide the necessary minimum contacts with Texas. *See Asahi Metal Indus. Co.*, 480 U.S. at 103, 107 S.Ct. 1026 (without evidence that manufacturer purposefully availed itself of California market, mere fact that its valve stems were sold there by a customer is not evidence of minimum contacts); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (that customers may move automobiles from state of sale without evidence of manufacturer's efforts to directly or indirectly serve forum is not sufficient to establish minimum contacts); *CSR v. Link*, 925 S.W.2d 591, 595 (Tex.1996) (that customer delivered asbestos to Texas port was not enough to satisfy minimum contacts requirement). For the same reason, payments made on checks drawn from Texas banks are not sufficient to establish minimum contacts. The record does not reflect that appellees, or the other owners, were required by contract to draw funds from Texas banks. Banking convenience for appellees should not be held against appellants.

Appellees further argue that appellants have established minimum contacts because they could foresee the vessels would be docked in Texas. Although foreseeability is a factor to consider in a minimum contacts analysis, foreseeability alone will not support personal jurisdiction. *CSR Ltd.*, 925 S.W.2d at 594; *see Guardian Royal*, 815 S.W.2d at 227. The defendant must take an action "purposefully directed toward the forum

state" to be subject to the jurisdiction of its courts. *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026; *CSR Ltd.,* 925 S.W.2d at 594.

■■■ The telephone calls between appellants and Texas will not provide the essential contacts. Most calls were made to a co-signer of promissory notes on behalf of customers who were in Alabama at the time of the calls. One call was initiated by a customer with a complaint. Only one call can be described as possibly soliciting business. These calls, mostly made on behalf of customers present in Alabama, can hardly be described as continuous or systematic.

■■■ Nor do we find that J & J purposefully availed itself of Texas laws merely because the corporation is required to submit an application for admeasurement in Houston for every vessel it constructs. Although the actual measurements are taken in Alabama, J & J has no alternative but to file the applications with the American Bureau of Shipping's national office, which happens to be located in Houston. If we were to find that the submission of these documents in Houston gives Texas courts jurisdiction over J & J, then the owner of any vessel registered with the Bureau could sue in Texas regardless of whether the owner is a resident and whether the vessel has any other connection with Texas.

■■■ Finally, even if we assumed for the sake of argument that J & J or SEE, Inc. had purposefully established continuous and systematic contacts with Texas, we hold those contacts cannot be attributed to Johnson. The courts will not hold individual officers, directors, or stockholders liable on the obligations of a corporation except where it appears the individuals are using the corporate entity as a sham to perpetrate a fraud, avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations not present here. *Bell Oil & Gas Co. v. Allied Chemical Corp.,* 431 S.W.2d 336, 339 (Tex.1968); *3–D Elec. Co., Inc. v. Barnett Const. Co.,* 706 S.W.2d 135, 138 (Tex.App.— Dallas 1986, writ ref'd n.r.e.). Similarly, jurisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corpo-

ration is the alter ego of the individual. *Vosko,* 909 S.W.2d 95, 99; *Clark v. Noyes,* 871 S.W.2d 508, 509 (Tex.App.—Dallas 1994, no writ); *Leon Ltd. v. Albuquerque Commons Partnership,* 862 S.W.2d 693, 708 (Tex. App.—El Paso 1993, no writ). Other than factually unsupported allegations, we find nothing in the record supporting the trial court's finding that Johnson did business as either J & J or SEE, Inc. Nor is there an allegation that J & J or SEE, Inc. were the alter egos of Johnson. The record shows that each company was incorporated under Alabama laws, maintained separate books, and employed separate bookkeepers.

We hold the evidence is insufficient to support the trial court's findings that appellants' conduct, whether the acts are considered collectively or individually, provides such continuous and systematic contacts with Texas as to be considered substantial. Appellants did not purposefully avail themselves of the Texas market. As appellants negated all bases of personal jurisdiction, we hold the trial court erred in denying appellants' special appearance. Appellants' first issue is sustained.

## F. Fair Play and Substantial Justice

■■■ Even if we considered appellants' contacts to be sufficient for general jurisdiction, we would have to find that asserting jurisdiction over appellants does not comport with notions of fair play and substantial justice. To invoke the fair play and substantial justice prong of due process, a nonresident defendant must present a compelling case that the exercise of jurisdiction would be unreasonable. *S.A.V.,* 837 S.W.2d at 85; *Vosko,* 909 S.W.2d at 98. We believe appellants presented such a case.

### 1. Burden on Defendant

Although modern travel has eased the burden of defending oneself in a foreign jurisdiction, appellants filed an affidavit showing that their business would be greatly affected. J & J is a small corporation with thirty employees, all of whom were involved in the construction of appellees' vessel. These employees likely will be called as witnesses. In addition, as J & J's corporate representative

and as a co-defendant, Johnson's presence likely will be required throughout the trial. As president of J & J, Johnson takes an active part in the day-to-day operations of the corporation. Johnson testified he had not considered that by signing a contract with Texas residents, he and J & J could be hailed into Texas courts, especially because the contract calls for arbitration in Alabama.

### 2. Texas's Interest

Because appellees are Texas residents who use their shrimp boats to enhance Texas commerce, Texas and its courts have an interest in providing appellees with a fair, convenient forum for litigating this dispute. However, several factors minimize the interest. Although the damages may have become manifest in Texas, the defects from which the alleged injuries arose occurred in Alabama during construction of the vessel. These injuries arose from a contract executed and performed entirely in Alabama. The contract calls for arbitration of disputes in Alabama. Texas law so favors arbitration that both "our Constitution and statutes provide for the submission of differences to arbitration." *Brazoria County v. Knutson,* 142 Tex. 172, 178, 176 S.W.2d 740, 743 (1943); *Nationwide of Fort Worth, Inc. v. Wigington,* 945 S.W.2d 883, 884 (Tex.App.—Waco 1997, writ dism'd w.o.j.); *Merrill Lynch, Pierce, Fenner & Smith v. Eddings,* 838 S.W.2d 874, 878 (Tex.App.—Waco 1992, writ denied).

### 3. Burden on Plaintiffs

While appellees would obviously prefer the convenience of litigating this dispute in Texas, we cannot say they would be impermissibly inconvenienced by bringing their cause of action in Alabama. Modern travel methods weigh equally for appellants and appellees. Appellees traveled to Alabama for the purpose of finding a shipbuilder. They pursued negotiations with appellants in Alabama and executed the contract there. Appellees then returned to Alabama to take delivery of the vessel. According to the terms of the contract, appellees agreed to have repairs performed in Alabama when practical and agreed to arbitrate all disputes in that state.

### 4. Alabama's Interest

Alabama has a significant interest in having this dispute litigated in its courts. As stated previously, at issue is an Alabama contract requiring construction of a vessel in Alabama by shipbuilders from that state. Fairly and equitably addressing any customer's complaints of shoddy workmanship and misrepresentation is essential to the state's ability to oversee and regulate its shipbuilding industry. Additionally, Alabama courts would attribute great importance to the parties' choice of that state's jurisdiction for arbitration. Thus, given the facts of this case, it is likely Alabama courts may choose not to enforce a Texas judgment favoring appellees, finding instead that the Texas court had improperly asserted personal jurisdiction over Alabama residents.

After considering these factors, we hold the trial court erred in concluding that the exercise of personal jurisdiction over appellants would comport with traditional notions of fair play and substantial justice. We sustain appellants' second issue.

In their third issue, appellants question whether the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA) applies to a purchase made by a Texas resident in another state. We will not address this issue because we do not have jurisdiction to review it in an interlocutory appeal.

Having found that appellants are not amenable to Texas jurisdiction, we reverse the trial court's order and dismiss this case for lack of personal jurisdiction.