TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00307-CV






Paul Priebe, Appellant



v.



Cindy Kolmeier, Appellee






FROM THE COUNTY COURT AT LAW OF COMAL COUNTY


NO. 97-CV-085, HONORABLE FRED CLARK, JUDGE PRESIDING 







 Cindy Kolmeier sued Paul Priebe seeking to recover damages for breach of contract
and deceptive trade practices in connection with her purchase of a horse. Priebe made a special
appearance to contest the trial court's exercise of jurisdiction over him. He appeals the trial
court's denial of his special appearance. We will reverse the denial of the special appearance and
dismiss the cause for lack of personal jurisdiction.


The underlying dispute


 The following summary of the underlying dispute is drawn from the clerk's record
and the reporter's record of the hearing on the special appearance. Live testimony at the hearing
came from Kolmeier and Marcia Pigott, a Texas resident not a party to this suit. Evidence
admitted at the hearing included excerpts from Priebe's answers to interrogatories, the affidavit
of Kolmeier's agent, Paul Cates, and copies of the horse's pedigree. Documents in the clerk's
record included Priebe's affidavit in support of his special appearance objecting to jurisdiction. 

 Kolmeier and Cates initiated their relationship with Priebe, a horse trainer, while
on a horse-buying trip to the Midwest. After a friend in Texas recommended they visit Priebe, 
Kolmeier and Cates went to Minnesota to look at a horse Priebe did not own but which was under
his care. While Kolmeier was in Minnesota, Priebe told her the horse was an eight-year-old
named The Storm Chaser. She testified that Priebe told her she would have thirty days after
purchasing the horse to decide whether to keep it. Kolmeier testified she did not offer to buy the
horse at that time. She requested the horse's pedigree, which Priebe faxed from Minnesota to
Texas. The pedigree showed that the horse was an eleven-year-old named The Fox Chaser. From
Texas, Cates called Priebe in Minnesota, who confirmed that the pedigree contained the correct
name and age of the horse the Texans had seen. During that call, Priebe accepted Kolmeier's offer
to buy the horse. After receiving funds from Kolmeier, Cates mailed a personal check from Texas
to pay for the horse. The Texans arranged and paid for the horse's shipping from Minnesota.

 Cates's assertions in his affidavit agreed with Kolmeier's testimony and
supplemented their version of events. Within the thirty-day approval period, he called Priebe from
Texas to tell him that Kolmeier wanted to return the horse. During that call, Priebe offered to
send a videotape from which Kolmeier could choose a replacement for the unsatisfactory horse. 
Kolmeier agreed to view the tape, but Priebe did not send the tape until after Kolmeier demanded
return of her money, apparently through an attorney. According to Cates, Priebe refused to take
the horse back after receiving the demand from an attorney.

 Priebe lived in Minnesota and did not travel to Texas during the entire transaction. 
He stated in his affidavit that, other than changing airplanes in Texas once, he had not been to
Texas since 1974. According to his affidavit, he does not have a bank account, mailing address,
or property in Texas, and does not advertise in Texas. His only contact with Texas was through
the mail and telephone wires. He denied that he would sell a horse with a money-back guarantee,
and particularly denied that he offered those terms to Kolmeier. He also denied offering a thirty-day approval period. He admitted making thirteen business-related calls to Texas in 1996 and
1997; he did not recall initiating any of the business contacts.

 Evidence showed that The Fox Chaser had been sold for $9,000 by Darlene Mannix
to John Scott on December 1, 1996, while Priebe held the horse. On December 19, Scott sold the
horse to Kolmeier for $13,500, though Cates's commission pushed her price to $15,000. Neither
Mannix nor Scott lives in Texas, and there is no evidence that they formed any part of these
contracts in Texas.

 Pigott testified that Priebe had called her in Texas and sent written communications,
videotapes, and stock to her from Minnesota to Texas. She said he sent three horses to her in
Texas during the 1990s. She had also sent him horses to sell as her agent.


Analysis


 Kolmeier seeks return of her purchase money and damages from deceptive trade
practices. The deceptive practices alleged include representing that an agreement, guarantee, or
warranty confers rights, remedies, or obligations that it does not; breach of a money-back
guarantee; and unconscionably failing to respond to her dissatisfaction promptly by refund of
money or delivery of videotape of substitute horses. She complains that Priebe misrepresented
the existence of the thirty-day approval period, failed to disclose the recent sale for a lower price,
and failed to send the tape promptly after learning of her dissatisfaction. She also complains about
Priebe's representations that the horse was eight years old and that she could return the horse
within thirty days if dissatisfied. 

 A Texas court may exercise personal jurisdiction over a nonresident defendant if
the following conditions are met: (1) the Texas long-arm statute authorizes jurisdiction, and (2)
the exercise of jurisdiction is consistent with federal constitutional due process standards. 
Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). Because Priebe's activities satisfied
the Texas long-arm statute's requirement, we will focus mostly on whether the exercise of
personal jurisdiction over Priebe comports with federal due-process guarantees. 

 The Texas long-arm statute extends personal jurisdiction over a nonresident who
commits a tort in whole or in part in Texas, or who forms a contract by mail or otherwise with
a Texas resident that either party is to perform in whole or in part in Texas. Tex. Civ. Prac. &
Rem. Code Ann. § 17.042 (West 1997). Priebe formed a contract with Texas resident Kolmeier
over the telephone. She agreed to pay for the horse from Texas and to move the horse to Texas. 
The long-arm statute is satisfied.

 We review the court's decision on the federal constitutional standards with a mixed
standard of review. We look at the entire record. J & J Marine, Inc. v. Le, 982 S.W.2d 918, 924
(Tex. App.--Corpus Christi 1998, no pet. h.). We review findings of fact, express or implied,
for the sufficiency of the evidence; the findings are not conclusive when there is a complete
record. Id. at 924. We review the court's conclusions of law for correctness. Id. at 925. A
nonresident defendant must negate all bases of personal jurisdiction to prevail in a special
appearance. CSR Ltd. v. Link, 925 S.W.2d 591, 596 (Tex. 1996). 

 State courts can exercise personal jurisdiction over a defendant who has some
minimum, purposeful contacts with the state only if the exercise of jurisdiction will not offend
traditional notions of fair play and substantial justice. CMMC v. Salinas, 929 S.W.2d 435, 437
(Tex. 1996). The defendant's contacts may create specific or general jurisdiction. See Guardian
Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex. 1991). 

 Specific jurisdiction attaches when the cause of action arises out of or relates to the
nonresident defendant's activities purposefully directed toward Texas. Id. The contact must have
resulted from the nonresident defendant's purposeful conduct and not the unilateral activity of the
plaintiff or others. Id. The litigation must result from injuries that arise out of or relate to the
defendant's activities directed toward the forum. Id. at 228. The specific-jurisdiction minimum-contacts analysis focuses on the relationship among the defendant, Texas, and the litigation. Id.
The quality and nature of the nonresident's contacts with Texas, rather than the number of
contacts, determine whether Texas can exercise jurisdiction over the party. See Memorial Hosp.
Sys. v. Fisher Ins., 835 S.W.2d 645, 650 (Tex. App.--Houston [14th Dist.] 1992, no writ). 
Receipt of a single phone call in another state can confer specific jurisdiction over the receiver if,
during that call, the receiver makes the material misrepresentation that causes the harm for which
the Texas-based maker of the call seeks recompense. Id. at 651.

 General jurisdiction may arise over a nonresident defendant who has substantial
continuous and systematic contacts with Texas even if the cause of action does not arise from or
relate to the nonresident's conduct within Texas. Guardian, 815 S.W.2d at 228. General
jurisdiction requires a showing of much more substantial activities in Texas than does specific
jurisdiction. Id. 

 If we find sufficient minimum contacts in Texas, we must decide whether the
assertion of personal jurisdiction comports with "traditional notions of fair play and substantial
justice." See id. at 228. At this stage, the defendant must present a compelling case that the
exercise of jurisdiction is unreasonable. Id. at 231. Only in rare cases will the exercise of
jurisdiction not comport with fair play and substantial justice when the nonresident defendant has
purposefully established minimum contacts with the forum state. Id.; see also Schlobohm, 784
S.W.2d at 358.

 The facts of this case resemble the facts of J & J Marine, Inc. v. Le. 982 S.W.2d
at 921-22. The plaintiffs were Texas residents who bought a shrimp boat from an Alabama boat
builder. Id. at 921. The defendants did not advertise in Texas. Id. at 926. The defendants called
a Texas resident (not a plaintiff in this case) asking whether she (or anyone she knew) was
interested in boats they had available. Id. at 922 & 925. The Texas plaintiffs initiated the contact
that led to the disputed sale by appearing in the defendants' Alabama office. Id. at 926. A Texas
resident acting on behalf of the plaintiffs negotiated with the defendants over the telephone from
Texas and sent loan papers for the boat purchases to Alabama. Id. at 925. The defendants knew
the plaintiffs were Texas residents and that the boat would be moored in Texas. They built seven
shrimp boats for Texas residents, though there was nothing particular to Texas about the
construction. Id. at 922 & 926. The plaintiffs accepted the boats in Alabama and transported
them to Texas. Id. at 926. The defendants also submitted applications to the American Bureau
of Shipping's national office in Houston. Id. 

 The Le court reversed the trial court's exercise of personal jurisdiction. The court
found no support for an exercise of specific jurisdiction. Id. at 925. The court rejected the trial
court's finding of general jurisdiction, terming the defendants' contacts with Texas "fortuitous." 
The court focused on a list of things the defendants did not do or have. In Texas, the defendants
did not have a license to do business; own or lease property; have an office, bank account, officer,
employee, agent, or representative; pay taxes; execute or perform contracts; solicit work or
employees; or advertise in any medium intended to reach Texas. Id. at 926. The court concluded
that the plaintiffs failed to show that defendants systematically, continuously, and purposefully
directed contacts toward Texas. Id. at 926-27.

 The evidence in the special-appearance record shows Priebe had very little contact
with Texas. Priebe made the representations and omissions while in Minnesota. There is no
evidence that he made the thirty-day guarantee any time but when Kolmeier was in Minnesota. 
The undisclosed early-December sale occurred outside of Texas among non-Texans; at most,
Priebe failed to mention it while on the phone to Texas. Though Kolmeier offered from Texas
to buy the horse, Priebe accepted the offer over the phone while in Minnesota. Kolmeier mailed
the payment from Texas, but Priebe received it and retained it in Minnesota. Priebe delivered the
horse to Kolmeier when the movers picked up the horse in Minnesota. After Kolmeier expressed
her dissatisfaction, Priebe at most offered to send the tape of the replacement candidates while on
the phone from Minnesota to Texas; his failure to send it occurred in Minnesota. Priebe does not
have a bank account, mailing address, or property in Texas, and does not advertise in Texas. His
occasional contacts with Texas were through the mail and telephone wires. He did not recall
initiating any of his business contacts with Texas.

 We conclude that the facts do not justify the finding of minimum contacts to support
specific jurisdiction. Kolmeier initiated the relationship and many of the contacts. Priebe's fax
to Texas regarding the horse's pedigree is not the basis for Kolmeier's claims in her amended
petition; even if it were, Priebe sent the fax from Minnesota. Their verbal contract made over the
phone is deemed to be made where the offer is accepted. See G.P. Enters., Inc. v. Adkins, 543
S.W.2d 913, 915-16 (Tex. Civ. App.--Texarkana 1976, no writ). Priebe made all of his
omissions and commissions, if any, in Minnesota.

 We also conclude that a finding of minimum contacts to support general jurisdiction
over Priebe is incorrect. Priebe's affidavit showed no continuous or systematic contacts with
Texas. People from Texas occasionally contacted him, he responded, and some horses he held
ended up in Texas, but there is no evidence that Priebe solicited business in Texas. Thirteen
responsive phone calls over two years do not constitute continuous or systematic contacts with
Texas. The evidence is that he did not direct activities toward Texas, but that he stayed in
Minnesota and Texans occasionally came to him.

 Because Priebe did not have the minimum contacts necessary to support the exercise
of personal jurisdiction over him, we need not discuss whether that exercise would comport with
traditional notions of substantial justice and fair play. 


Conclusion


 We hold that Priebe did not have minimum contacts with Texas to support either
specific or general jurisdiction. We therefore reverse the trial court's denial of his special
appearance and dismiss the cause for lack of personal jurisdiction.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Judgment Reversed and Cause Dismissed

Filed: April 8, 1999

Do Not Publish









* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



rted
them to Texas. Id. at 926. The defendants also submitted applications to the American Bureau
of Shipping's national office in Houston. Id. 

 The Le court reversed the trial court's exercise of personal jurisdiction. The court
found no support for an exercise of specific jurisdiction. Id. at 925. The court rejected the trial
court's finding of general jurisdiction, terming the defendants' contacts with Texas "fortuitous." 
The court focused on a list of things the defendants did not do or have. In Texas, the defendants
did not have a license to do business; own or lease property; have an office, bank account, officer,
employee, agent, or representative; pay taxes; execute or perform contracts; solicit work or
employees; or advertise in any medium intended to reach Texas. Id. at 926. The court concluded
that the plaintiffs failed to show that defendants systematically, continuously, and purposefully
directed contacts toward Texas. Id. at 926-27.

 The evidence in the special-appearance record shows Priebe had very little contact
with Texas. Priebe made the representations and omissions while in Minnesota. There is no
evidence that he made the thirty-day guarantee any time but when Kolmeier was in Minnesota. 
The undisclosed early-December sale occurred outside of Texas among non-Texans; at most,
Priebe failed to mention it while on the phone to Texas. Though Kolmeier offered from Texas
to buy the horse, Priebe accepted the offer over the phone while in Minnesota. Kolmeier mailed
the payment from Texas, but Priebe received it and retained it in Minnesota. Priebe delivered the
horse to Kolmeier when the movers picked up the horse in Minnesota. After Kolmeier expressed
her dissatisfaction, Priebe at most offered to send the tape of the replacement candidates while on
the phone from Minnesota to Texas; his failure to send it occurred in Minnesota. Priebe does not
have a bank account, mailing address, or property in Texas, and does not advertise in Texas. His
occasional contacts with Texas were through the mail and telephone wires. He did not recall
initiating any of his business contacts with Texas.

 We conclude that the facts do not justify the finding of minimum contacts to support
specific jurisdiction. Kolmeier initiated the relationship and many of the contacts. Priebe's fax
to Texas regarding the horse's pedigree is not the basis for Kolmeier's claims in her amended
petition; even if it were, Priebe sent the fax from Minnesota. Their verbal contract made over the
phone is deemed to be made where the offer is accepted. See G.P. Enters., Inc. v. Adkins, 543
S.W.2d 913, 915-16 (Tex. Civ. App.--Texarkana 1976, no writ).