David G. STAUFFACHER, Individually, Appellant,

v.

LONE STAR MUD, INC., et al., Appellee.

No. 06–00–00166–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 2, 2001.

Decided Aug. 21, 2001.

Robert T. Silvis, Madison, for appellant.

Garland D. Cardwell, Rhonda B. Lewis, Munson, Munson, Pierce & Cardwell, PC, Sherman, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS

David Stauffacher appeals from the trial court's denial of his special appearance. Lone Star Mud, Inc., sued Stauffacher and six other defendants, alleging that they failed to pay for services and materials that Lone Star provided for the drilling and operating of an oil well in Fannin County. Stauffacher, a Wisconsin resident, filed a special appearance along with an answer and special exceptions to Lone Star's petition, both of which he made subject to his special appearance.

Stauffacher alleged that the trial court did not have jurisdiction over him because (1) he is not and has never been a Texas resident; (2) Lone Star's suit did not arise out of his business in Texas; (3) he does not individually conduct business in Texas, and does not have an agent in Texas authorized to conduct business on his behalf; (4) he does not individually own property in Texas; (5) he had no personal involvement or individual interest in the subject matter of Lone Star's suit; (6) he did not make any representation to Lone Star either in an individual or representative capacity, he did not negotiate or enter into any contract with Lone Star, he does not have an account with Lone Star, and he did not travel to Texas for any purpose related to Lone Star's claim; and (7) he has not undertaken any act or transaction constituting minimum contacts with Texas, or otherwise acted in a way that would make the assumption of jurisdiction over him by the Texas court comport with the requirements of federal due process. In support of his special appearance, Stauffacher attached his affidavit, which detailed the extent of his contacts with Texas.

Lone Star filed a written response to Stauffacher's special appearance, in which it alleged that the other defendants—DGS Oil, L.L.C., the operator of the well; Exel Royal, L.L.C., the leaseholder; and Equity Drilling Company and Diamond Drilling Company, the drillers-are Stauffacher's alter egos. Lone Star also amended its petition to allege facts authorizing the disregard of the corporate entities.

At the hearing on Stauffacher's special appearance, Lone Star presented evidence in the form of responses to interrogatories and requests for production showing (1) that Stauffacher is the managing member of both DGS Oil and Exel Royal; (2) that neither entity disclosed any other members; (3) that the operating capital for DGS Oil and Exel Royal was provided by member contributions, i.e., from Stauffacher; (4) that Stauffacher, DGS Oil, and Exel Royal all have the same Madison, Wisconsin, address; (5) that Stauffacher transferred or used his personal funds to or for the benefit of DGS Oil and Exel Royal without creating a corresponding debt to be repaid to him; (6) that between August 14, 1996 and July 28, 1998, fifty-six checks totaling over $2.4 million were written on Stauffacher's individual account to purchase the lease, and to pay drilling and other costs associated with the well; (7) that Stauffacher personally signed thirty-nine of those checks (the other checks being signed primarily by one other person); (8) that four of the fifty-six checks totaling over $130,000.00 were written to Texas companies; (9) that only two checks used to pay costs associated with the well were written on DGS Oil's account; and (10) that those two checks were among the first written after DGS Oil began operating the well.

Lone Star also presented the affidavit of its employee, R. Mark Turner, in which he stated that his job responsibilities included securing customers for Lone Star; that he received a call from a representative of

Equity Drilling, who was providing the drilling rig on the well; that Equity Drilling's representative asked Lone Star to provide "mud on a well operated by DGS Oil;" that Turner asked about DGS Oil, its financial condition, and whether it was paying its suppliers on time; and that Equity Drilling's representative told him "that DGS Oil was a company owned by David G. Stauffacher out of Madison, Wisconsin and that he owned Exel Inns and was well off enough to pay the bills."[1]

■ At the end of the hearing, the trial court overruled Stauffacher's special appearance. Stauffacher requested findings of fact and conclusions of law, but the trial court did not file any findings, and Stauffacher did not file a notice of past due findings of fact and conclusions of law. TEX.R.CIV.P. 296, 297. Stauffacher would have been entitled to findings of fact and conclusions of law had he properly requested them and pursued his entitlement thereto as provided by TEX.R.CIV.P. 296 and 297. *Daimler–Benz Aktiengesellschaft v. Olson,* 21 S.W.3d 707 (Tex.App.—Austin 2000, pet. dism'd w.o.j.); *In re Estate of Judd,* 8 S.W.3d 436, 440 (Tex. App.—El Paso 1999, no pet.). When, as here, the trial court has not made findings of fact and conclusions of law, we presume that it resolved all factual disputes in support of the judgment. *Cartlidge v. Hernandez,* 9 S.W.3d 341, 345 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (citing *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990)). When, as here, a reporter's record is available on appeal, the parties may challenge these implied findings by factual sufficiency and legal sufficiency points in the same way they may challenge jury findings or a trial court's findings of fact. *E.L.M. LeBlanc v. Kyle,* 28 S.W.3d 99, 102 (Tex.App.—Texarkana 2000, pet. ref'd). When such evidence sufficiency points are raised, the standard of review to be applied is the same as that to be applied in the review of jury findings.

■ A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas long-arm statute are satisfied. U.S. CONST. amend. XIV, § 1; TEX. CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404, 410 (1984); *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). The Texas Supreme Court has consistently interpreted the long-arm statute as reaching "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991).

■ Under the Due Process Clause, a defendant must have sufficient minimum contacts with the forum so that maintaining suit there will not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, 102 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed.

---

1. Stauffacher filed written objections to Turner's affidavit and raised those objections at the hearing on his special appearance. Stauffacher also objected to many of Lone Star's interrogatories and requests for production, and made his responses conditioned on those objections. At the hearing, Stauffacher agreed to waive his objections to certain specified interrogatories and requests for production for purposes of the special appearance. However, he did not waive his objections to Turner's affidavit. The record is unclear whether the trial court considered Turner's affidavit in making its ruling. Nevertheless, in view of Stauffacher's failure to obtain a ruling on his objection, Turner's affidavit was before the trial court, and we will consider it as part of the record on appeal.

278, 285 (1940)). A nonresident defendant who has purposefully availed himself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528, 542–43 (1985). A defendant, however, should not be subjected to the jurisdiction of a foreign court based on random, fortuitous, or attenuated contacts.

■ The Texas Supreme Court has articulated a three-pronged formula to ensure compliance with the federal due process standard: (1) there must be a substantial connection between the nonresident defendant and Texas arising from some action or conduct of the nonresident defendant purposefully directed toward Texas; (2) the cause of action must arise out of or relate to the defendant's contacts with Texas (specific jurisdiction), or if not, the defendant's contacts with Texas must be continuing and systematic (general jurisdiction); and (3) the assumption of jurisdiction must not offend traditional notions of fair play and substantial justice. *In re S.A.V.,* 837 S.W.2d 80, 85 (Tex.1992). Neither the Texas formula nor any other test for personal jurisdiction should be applied mechanically. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 358 (Tex.1990). In determining the third prong of the Texas formulation, we must give due consideration to (1) the burden on Stauffacher, (2) the interests of Texas in adjudicating the dispute, (3) Lone Star's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in achieving the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World–Wide Volkswagen Corp. v. Wood-*

*son,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490, 498 (1980); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d at 228.

Stauffacher first contends the trial court could not assume jurisdiction because he did not contract with Lone Star in his individual capacity, and has not otherwise individually engaged in business in Texas. Thus, he contends the minimum contacts necessary for the trial court to assert jurisdiction are absent. Lone Star points to evidence that Stauffacher was the sole member of DGS Oil and Exel Royal, and thus stood to benefit from the well's success. Lone Star also observes that Stauffacher paid suppliers for the well in Texas from his own account.

■ In response, Stauffacher correctly points out that jurisdiction over an individual generally cannot be based on jurisdiction over the corporation with which he is associated, unless the corporation is the individual's alter ego. Stauffacher also contends that his making payments in Texas is insufficient to establish the minimum contacts necessary to establish personal jurisdiction.

We need not decide whether Stauffacher's payments to in-state and out-of-state creditors, who supplied labor and materials to a Texas oil well venture that was leased and operated by limited liability companies of which he was the sole member, is sufficient to confer jurisdiction on the trial court. The trial court could have rationally concluded that DGS Oil is Stauffacher's alter ego, thus making personal jurisdiction over him appropriate.

■ As noted earlier, the general rule is that a court may not assert personal jurisdiction over an individual based on the individual's relation to a corporation unless the corporation is the individual's alter ego. *Royal Mortgage Corp. v. Montague,*

41 S.W.3d 721, 738 (Tex.App.—Fort Worth 2001, no pet. h.); *Al–Turki v. Taher,* 958 S.W.2d 258, 263 (Tex.App.—Eastland 1997, pet. denied); *Vosko v. Chase Manhattan Bank, N.A.,* 909 S.W.2d 95, 99 (Tex.App.—Houston [14th Dist.] 1995, writ denied). But if a plaintiff pierces the corporate veil by proving alter ego, insider fraud, or use of the corporation for illegal purposes, the trial court may base personal jurisdiction over the corporate agent on the contacts of the corporation. *Haught v. Agric. Prod. Credit Ass'n,* 39 S.W.3d 252, 258 (Tex. App.—Tyler 2000, no pet.).

▮▮▮▮ Under the alter ego theory, courts may disregard the corporate entity where there exists such unity between the corporation and the individual that the corporation ceases to be a separate entity, and where to hold only the corporation liable would promote injustice. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990); *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986). To determine whether an alter ego relationship exists, the courts look at the totality of the dealings and relationships between the corporation and the individual. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d at 228; *Castleberry v. Branscum,* 721 S.W.2d at 272. This may include evidence of the degree to which corporate formalities have been followed; whether corporate and individual property have been kept separate; the amount of financial interest, ownership, and control the individual maintains over the corporation; and whether the corporation has been used for personal purposes. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d at 228; *Castleberry v. Branscum,* 721 S.W.2d at 272.

▮▮▮▮ Stauffacher contends Lone Star has the burden to show the existence of an alter ego relationship, citing *3–D Elec. Co. v. Barnett Constr. Co.,* 706 S.W.2d 135, 140 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

However, a nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *CSR Ltd. v. Link,* 925 S.W.2d at 596; *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985); *Hawsey v. Louisiana Dep't of Soc. Servs.,* 934 S.W.2d 723, 725 (Tex.App.—Houston [1st Dist.] 1996, writ denied); 3 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 11.91, pp. 193–94 (2d ed.2000). The *3–D Electric Company v. Barnett Construction Company* case is distinguishable because there the trial court initially overruled the special appearance, but after a full trial reconsidered its ruling on personal jurisdiction. *3–D Elec. Co. v. Barnett Constr. Co.,* 706 S.W.2d at 137.

▮▮▮▮ On appeal, where there are no findings of fact in the record, all questions of fact are presumed in favor of the trial court's judgment. *See Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987). The party contesting jurisdiction also has the burden to negate alter ego as a basis of jurisdiction when it is an issue. *See Haught v. Agric. Prod. Credit Ass'n,* 39 S.W.3d 252, 263 (Tex.App.—Tyler 2000, no pet. h.); *Cadle v. Graubart,* 990 S.W.2d 469, 473 (Tex.App.—Beaumont 1999, no pet.). In *Al–Turki v. Taher,* the court of appeals evaluated the plaintiffs' challenge to the trial court's finding that the defendant was not the alter ego of a foreign corporation by using the "no evidence" and "insufficient evidence" standards, which are the standards for evaluating legal and factual sufficiency when a party challenges a finding on which his opponent, i.e., the defendant, had the burden of proof. *Al–Turki v. Taher,* 958 S.W.2d at 263; *see* W. Wendell Hall, *Standards of Review in Texas,* 29 ST. MARY'S L.J. 476–87 (1998).

Whether a trial court may assume personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *E.L.M. LeBlanc v. Kyle*, 28 S.W.3d at 101–02. We review the trial court's resolution of any underlying factual questions for factual sufficiency of the evidence. We will affirm if we may uphold the trial court's order on any legal theory finding support in the evidence.

Stauffacher contends there is no evidence or insufficient evidence to show that DGS Oil is his alter ego. When a party challenges the legal sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). In reviewing such a legal sufficiency challenge, we must first examine the record for evidence that supports the finding, while disregarding all evidence to the contrary. If there is no evidence to support the finding, we must then examine the entire record to determine if the contrary proposition is established as a matter of law.

Reviewing the record, we find ample evidence to support the trial court's finding. Stauffacher and DGS Oil have the same Madison, Wisconsin, address. Stauffacher is the managing member of DGS Oil, and no other member was disclosed. DGS Oil was capitalized with member contributions. Stauffacher admitted that he used his personal funds for the benefit of DGS Oil without creating a corresponding debt. Further, the record contains numerous checks, drawn on Stauffacher's account and signed by him, which were used to pay drilling and other operations costs associated with the well in Texas. In contrast, the record contains only two checks drawn on DGS Oil's account to pay costs associated with the well. Thus,

there is legally sufficient evidence to support the trial court's implied finding of alter ego.

When considering a factual sufficiency challenge to the evidence, we review the entire record and set aside the finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Facciolla v. Linbeck Constr. Corp.*, 968 S.W.2d 435, 445 (Tex. App.—Texarkana 1998, no pet.). We must be mindful that the trial court was not convinced by a preponderance of the evidence. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Facciolla v. Linbeck Constr. Corp.*, 968 S.W.2d at 445. We may not substitute our opinion for that of the trier of fact merely because we might have reached a different conclusion. *Facciolla v. Linbeck Constr. Corp.*, 968 S.W.2d at 445.

Stauffacher points to evidence offered by Lone Star that he contends refutes its alter ego theory. Specifically, this evidence includes (1) assignments of the oil and gas leases to Exel Royal; (2) a drilling contract between DGS Oil and Equity Drilling signed by DGS Oil's authorized agent; (3) two invoices from Equity Drilling to DGS Oil; (4) Texas Natural Resource Conservation Commission (TNRCC) and Texas Railroad Commission (TRC) documents naming DGS Oil as the well's operator; (5) sight drafts from Exel Royal to lease interest holders; (6) a Commercial Lines insurance policy naming DGS Oil as the insured; and (7) certificates held by DGS Oil signifying that Equity Drilling maintained various liability insurance policies.

We do not agree that these documents refute Lone Star's alter ego theory. The assignment of the lease in Fannin County

was dated August 6, 1997.[2] Under the drilling contract, Equity Drilling was to begin drilling around July 7, 1997. The invoices from Equity Drilling are dated July 15, 1997, and August 6, 1997, respectively. The TNRCC and TRC documentation was issued on April 11, 1997, and May 12, 1997, respectively. The sight drafts were written in 1995 and are for a well in Carter County, Oklahoma. DGS Oil's insurance policy was effective beginning July 16, 1997, while its certificates signifying that Equity Drilling maintained insurance are dated June 24, 1997, and July 11, 1997.

In contrast, fifty-two checks used to pay drilling and other operations costs were written on Stauffacher's personal account from October 1, 1997 to July 28, 1998. Stauffacher personally signed most of these checks. Only two checks were written on DGS Oil's account to pay drilling costs, and both of them were written in September 1997. Further, at least two checks were written on Stauffacher's account in 1996 and early 1997 to pay for the lease assignment.

The evidence is consistent with the theory that as the venture's length extended beyond the middle part of 1998 and as drilling costs accrued, the lines of demarcation between DGS Oil and Stauffacher individually became blurred. There is nothing in the record to refute that theory. Thus, the trial court's finding of alter ego is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.

Stauffacher also contends there is no evidence that DGS Oil or Exel Royal were used primarily for his personal benefit or that he transferred money for his own benefit. We disagree. Under all the circumstances, the trial court could have rationally concluded that Stauffacher paid expenses on the well because DGS Oil was his alter ego and it hoped to make a profit from the well. Moreover, if Stauffacher successfully acted individually through DGS Oil, he could shield himself from personal liability to Lone Star Mud in the courts of Texas and thereby perpetrate an injustice on Lone Star Mud.

The cases Stauffacher cites in support of his contention that DGS Oil is not his alter ego and that the trial court could not properly assert jurisdiction are all distinguishable. In *J & J Marine, Inc. v. Le,* 982 S.W.2d 918, 927 (Tex.App.—Corpus Christi 1998, no pet.), the plaintiff did not allege an alter ego theory. In *Vosko v. Chase Manhattan Bank, N.A.,* 909 S.W.2d 95, 99–100 (Tex.App.—Houston [14th Dist.] 1995, writ denied), the plaintiff failed to allege that a corporation over which the trial court had jurisdiction was the defendant's alter ego, while the trial court did not have jurisdiction over two other corporations that were shown to be the defendant's alter ego. In *Leon Ltd. v. Albuquerque Commons P'ship,* 862 S.W.2d 693, 707 (Tex.App.—El Paso 1993, no writ), the evidence showed nothing more than that the defendant was the sole shareholder, officer, and employee of the corporation, and thus failed to establish the plaintiff's alter ego theory.

In *3–D Elec. Co. v. Barnett Constr. Co.,* 706 S.W.2d at 139, the only evidence showing that the subcontractor corporation was the alter ego of the general contractor corporation was (1) that some of the subcontractor's officers were also officers of the general contractor; (2) that the two corporations had offices in the same building; (3) that the president of the subcon-

---

**2.** The record also contains an assignment of a lease in Garvin County, Oklahoma, on February 1, 1996.

tractor was authorized to sign the contract between the general contractor and the plaintiff and had some authority over the work on the project; and (4) that the plaintiff never thought the subcontractor and general contractor were separate entities.

The record here shows a personal involvement and interest that was not present in *3–D Electric Company v. Barnett Construction Company.* Here Stauffacher has initiated and funded the operator of an oil well (DGS Oil), while signing numerous checks on his personal account over a two-year period to pay the well's operations and lease costs. It should also be observed that *3–D Electric* was decided on a fully developed record, the trial court having reconsidered after trial its decision to deny the defendant's special appearance.

Stauffacher observes that the Texas Business Corporation Act only provides for an alter ego theory when the plaintiff demonstrates that the corporation has been used to perpetrate an actual fraud for the direct personal benefit of the defendant. TEX.BUS.CORP.ACT ANN. art. 2.21(A)(2) (Vernon Supp.2001). Lone Star counters that the Texas Limited Liability Company Act provides that the laws of the jurisdiction in which a foreign limited liability company was formed determines the liability of a member of the company for the debts and liabilities of the company. TEX.REV.CIV. STAT. ANN. art. 1528n-7.02(A) (Vernon 1997). Lone Star observes that the Wisconsin statutes governing limited liability companies allow courts to ignore the limited liability company entity under principles of common law and under circumstances that are not inconsistent with the purposes of the governing law. WIS.STAT. § 183.0304(2) (2000).

■ We need not address these issues, as it is not our role to determine the merits of Lone Star's claim. In *Zac Smith*

*& Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987), the defendant argued that Texas did not have jurisdiction because the joint venture agreement on which jurisdiction was predicated failed as a matter of law. The Texas Supreme Court held that "[w]hether the joint venture agreement in fact creates a joint venture goes to the question of liability for the alleged breach, and not to the question of jurisdiction." *See also Smith v. Lanier,* 998 S.W.2d 324, 333 (Tex.App.—Austin 1999, pet. denied).

We do not reach the question of whether DGS Oil is in fact Stauffacher's alter ego. We merely hold that Stauffacher failed to negate Lone Star's alter ego theory as a basis of jurisdiction. That theory allows the trial court to assert jurisdiction over Stauffacher based on DGS Oil's contacts with Texas.

DGS Oil and Stauffacher had a substantial connection to Texas arising from the oil well venture they initiated in Fannin County. Lone Star's cause of action arises out of that venture because it alleges that DGS Oil and Stauffacher failed to pay for services Lone Star rendered. Thus, specific jurisdiction is appropriate. The assumption of jurisdiction in these circumstances does not offend traditional notions of fair play and substantial justice. Texas has an interest in ensuring that one of its citizens may litigate a dispute with a nonresident defendant when that suit arises out of activities of the nonresident defendant in Texas.

The judgment is affirmed.