

**NUMBER 13-06-441-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ENRIQUE CARDENAS GONZALEZ,**                                    **Appellant,**

**v.**

**KARL R. LEHTINEN AND NATIONWIDE
SERVICES, INC.**                                                              **Appellees.**

---

**On appeal from the County Court at Law No. 1
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides
Memorandum Opinion by Justice Benavides**

A citizen and resident of Mexico created and registered a limited liability company

in Texas and served as one of the company's managing members. He now asserts he is

not amenable to the jurisdiction of the Texas courts. We disagree. In this interlocutory

appeal, we find he is subject to jurisdiction in Texas because he "did business" in the

State, as the long-arm statute requires, and because exercising jurisdiction over him would

not violate any traditional federal or state guarantees of due process. We affirm the trial court's denial of his special appearance.

## I. FACTUAL BACKGROUND

The appellant is Enrique Cárdenas González, the former governor of Tamaulipas, Mexico from 1975-81. Cárdenas is a prominent Mexican citizen, but he is also connected to the United States—specifically, the city of McAllen, Texas—in two significant respects. First, he owns residential and commercial property in McAllen; second, he established a limited liability company called Hidalgo Truck & Equipment, LLC ("Hidalgo Truck") in McAllen on July 14, 2000. Hidalgo Truck's articles of organization designate Cárdenas and his associate, Raymond Derr, as the two "managing members" of the company.[1] Hidalgo Truck's purpose was to acquire and sell trucks and related equipment to customers in Mexico.

In approximately 2001, Hidalgo Truck entered a business relationship with appellees, Nationwide Services, Inc. ("Nationwide") and its president, Karl Lehtinen, of Willow Springs, Illinois. According to Lehtinen, he was induced into the business relationship, in part, by a personal assurance from Cárdenas that, because Cárdenas was "a very wealthy man," there "would be no money problems with this kind of business."

The business arrangement was simple: Nationwide provided trucks; Hidalgo Truck provided customers. Nationwide, operating out of Illinois, acquired title and physical possession of the trucks and transported them to Hidalgo Truck's offices in McAllen, where Hidalgo Truck provided storage and maintenance facilities. Hidalgo Truck located the

---

[1] Raymond Derr, who was also designated as the registered agent, is not a party to this appeal.

buyers for the vehicles and negotiated the sale prices, but it was not authorized to transport the vehicles from its McAllen facilities to Mexico until Nationwide had finalized the sales by negotiating the transfer of title to the trucks.

In January 2002, Lehtinen began to express frustrations to Cárdenas about not receiving payments from Hidalgo Truck for procurement services which he estimated to be worth approximately $500,000. Lehtinen felt that receiving payment was always difficult with Hidalgo Truck because it did not use standard billing formalities, such as invoices. "Everything would be either an overpayment or an underpayment," he testified, "and it was an accounting nightmare." Lehtinen wanted to retrieve his trucks from McAllen and take them back to Illinois, but he attests that he was talked out of this plan by Cárdenas, who personally told him, "I will pay you for your trucks."

Lehtinen, however, was not paid for the trucks—he was sued. Hidalgo Truck filed suit against Lehtinen and Nationwide in 2003. Cárdenas, in his individual capacity, was not a named plaintiff. The original claim is unclear from the record, but it appears that Hidalgo Truck may have alleged a partnership with Lehtinen and Nationwide, and it was seeking wind-up costs.[2] Lehtinen and Nationwide responded to the suit by counterclaiming and by adding Cárdenas as a third-party defendant.[3] In the counterclaim, Lehtinen and Nationwide alleged conversion (among other related claims) contending that Hidalgo Truck,

---

[2] Hidalgo Truck's petition is not in the clerk's record, but according to a statement made by Lehtinen's counsel at the special appearance hearing, Hidalgo Truck sued "apparently saying they were in partnership with [Lehtinen] and saying that they did not owe the half million that he claimed he owed, that they owed like 200,000 and they were selling the vehicles and they would get the money. . . ."

[3] In the oral arguments before this court, counsel for Cárdenas stated that Cárdenas was not originally a named defendant in this third-party petition. Instead, he claims that Cárdenas was added in a subsequently amended version. (His counsel further argued that Nationwide and Lehtinen added Cárdenas, merely because they sought a solvent defendant.) The appellate record provides no indication of whether or not this is accurate.

3

Derr, and Cárdenas had wrongfully transported the trucks to undisclosed locations in Mexico.

Cárdenas filed a special appearance with County Court at Law Number One to contest the trial court's jurisdiction over him. *See* TEX. R. CIV. P. 120. On April 4, 2006, the trial court held a hearing to address the issue of personal jurisdiction. Lehtinen was the only witness called, and he testified that there was no distinction between Cárdenas and Hidalgo Truck. His testimony, in essence, advanced an alter-ego theory.

Lehtinen testified that "Cárdenas is Hidalgo Truck . . . and there is no LLC." He further said that "[Cárdenas] individually was the only thing there. The corporation was nothing." Lehtinen emphasized that Cárdenas was "the biggest principal of Hidalgo [Truck]" and "was the man in charge." Derr was "the management person there that ran the place, but he was under the control of Cárdenas. Cárdenas would tell him what he wanted done." Although prodded by Cárdenas's counsel, Lehtinen pointedly refused to differentiate between Cárdenas and the company: "[Hidalgo Truck] is the dealer name that they had used . . . [but] it was Cárdenas that [sic] set up all of the deals for anything that was sold into Mexico."

In addition to his testimony, Lehtinen provided a sworn affidavit in which he stated that during the course of his business relationship with Hidalgo Truck between 2001 and 2003, he negotiated directly with Cárdenas, often "at his facility at 5800 South 10th Street" in McAllen. According to a deed in the appellate record, this address, which was the property on which Hidalgo Truck operated, was owned by Cárdenas. The property was also listed in the 2003 Texas Franchise Tax Public Information Report, which is also available in the record, as Hidalgo Truck's principal office and place of business, and the

4

articles of organization list it as Cárdenas's mailing address.

Lehtinen further attested that he generally made monthly visits to this address, and on these occasions, he nearly always encountered Cárdenas. For those occasions when Cárdenas could not be on the premises, Lehtinen asserted that Cárdenas kept an accountant at the facility who "reported directly to him." Regardless of whether Cárdenas was on the property, however, Lehtinen said that he could usually be reached by phone when dialing the telephone number for Hidalgo Truck.

Cárdenas submitted an affidavit, via counsel, in which he challenged the truthfulness of Lehtinen's stated facts. Cárdenas admitted he once served as the "managing member" of Hidalgo Truck, and "that entity" had a business relationship with Lehtinen. He also conceded he had once had a social meeting with Lehtinen and Derr at which the other two gentlemen—but not Cárdenas—discussed a possible business venture "regarding tequila." Cárdenas maintained this was the only meeting, and he was not a part of the portion of the conversation with Lehtinen pertaining to the tequila venture. Finally, Cárdenas declared that he was "not a resident of the state of Texas," did not "individually . . . maintain a place of business in Texas," and had "no employees, servants, or agents within the state of Texas." He denied individually engaging in business in Texas, committing any tort in Texas, or having any substantial connection with Texas based upon his conduct.

In a written order on July 12, 2006, the district court denied Cárdenas's special appearance. The trial court did not provide findings of fact or conclusions of law.

5

Cárdenas filed this interlocutory appeal.[4]  *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7) (Vernon Supp. 2007).

## II. STANDARD OF REVIEW

When a Texas plaintiff sues a nonresident defendant, the plaintiff initially bears the burden of pleading allegations sufficient to demonstrate the jurisdiction of the Texas court. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002).  Next, the burden shifts to the nonresident defendant to negate all jurisdictional bases.  *Id.* (citing *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985)).

We apply a de novo review to a trial court's denial of a special appearance because personal jurisdiction is a question of law.  *BMC Software*, 83 S.W.3d at 794 (disapproving of case law which exclusively applies an abuse of discretion standard).  We recognize, however, that the trial court must often resolve fact disputes before it reaches the jurisdictional question, and we review these findings for legal and factual sufficiency.  *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)).  A finding is legally insufficient if the record reflects (1) a complete absence of evidence of vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact.  *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).  A finding is factually sufficient unless it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust."

---

[4] At some point—the record is unclear as to when—Hidalgo Truck declared bankruptcy.  According to testimony in the reporter's record, the bankruptcy stay has been lifted, and it is not a barrier to our ability to hear and decide this case.  Neither party mentions the bankruptcy stay in their appellate briefs, and we presume it has no impact on this appeal.

6

*Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

When, as in the instant case, the trial court does not issue findings of fact with its special appearance ruling, we must affirm if we can uphold the trial court's order on any legal theory supported by the evidence. *See BMC Software*, 83 S.W.3d at 795; *Happy Indus. Corp. v. Am. Specialties, Inc.*, 983 S.W.2d 844, 846 (Tex. App.–Corpus Christi 1998, pet. dism'd w.o.j.). Because the reporter's and clerk's records are available in this appeal, the implied findings of the trial court are not necessarily conclusive and may be challenged for legal and factual sufficiency. *See BMC Software*, 83 S.W.3d at 794.

### III. ANALYSIS

A Texas court may exercise personal jurisdiction over a nonresident defendant if (1) it is authorized to do so by the Texas "long-arm" statute, which permits jurisdiction over a person who "does business" in Texas, and (2) the exercise of jurisdiction comports with traditional state and federal guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 559, 574 (Tex. 2007); *see Brack v. Island Park Estates, LLC*, No. 13-06-698-CV, 2007 Tex. App. Lexis 9413, at **8-9 (Tex. App.–Corpus Christi Nov. 29, 2007, no pet. h.) (mem. op.).

In this case, for the reasons we discuss below, we believe the trial court was presented with sufficient evidence to make an implied finding that Hidalgo Truck was the alter ego of Cárdenas, and thus Cárdenas, via his alter ego, is reached by the long-arm statute as someone who "did business" in Texas. *See BMC Software*, 83 S.W.3d at 798. Subjecting Cárdenas to the reach of the long-arm statute does not violate due process principles because he possesses the requisite minimum contacts via the acts of Hidalgo

Truck that are imputed to him under the alter-ego doctrine and because no traditional notions of fair play and substantial justice are impinged. *See id.* at 795.

**A.    Evidence that Cárdenas—via the Alter Ego of Hidalgo Truck—Did Business in Texas**

The Texas long-arm statute authorizes jurisdiction over a nonresident defendant who "does business" in the State of Texas.[5] TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon Supp. 2007). Because the trial court denied Cárdenas's special appearance, it evidently concluded that Cárdenas had done business in Texas and was amenable to jurisdiction under the long-arm statute. The trial court, however, did not issue findings of fact or conclusions of law explaining why it reached this conclusion. In such circumstances, we affirm the trial court's order based upon any legal theory finding support in the evidence. *See BMC Software*, 83 S.W.3d at 794. The legal theory with the most obvious support in the evidence is that Hidalgo Truck is the "alter ego" of Cárdenas; and therefore, Hidalgo Truck's extensive record of doing business in Texas is imputed to Cárdenas. *Id.* at 798.

---

[5] The long-arm statute provides that a nonresident "does business" in Texas if he

"(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state."

TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. The actions listed, however, are not exclusive, and the Texas Supreme Court has held that acts which "concern a business enterprise" may allow for the exercise of jurisdiction over a nonresident defendant. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356-57 (Tex. 1990) (conducting the business's first meeting in Texas, serving as sole shareholder and sole director, sending a personal accountant to Texas to ensure proper procedures, and traveling independently to Texas for a personal investigation of the business are acts which, in concert, can constitute "doing business" in Texas). The language of section 17.042 is broad, and must be construed "as far as the federal constitutional requirements of due process will permit." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

8

## 1. The Alter Ego Doctrine

An individual's contacts with Texas on behalf of a business entity that is designed to limit individual liability do not ordinarily establish personal jurisdiction over the individual, but an exception is recognized for cases in which the trial court finds alter ego is implicated. *J & J Marine, Inc. v. Ha Van Le*, 982 S.W.2d 918, 927 (Tex. App.–Corpus Christi 1998, no pet.). Under the theory of alter ego, courts may disregard the formal registration of a company because there exists such unity between the company and the individual that the company ceases to be a separate entity. *In re Smith*, 192 S.W.3d 564, 568 (Tex. 2006).

Alter ego is a theory under which plaintiffs may pierce the corporate veil and hold individual officers, directors, and stockholders of a company personally liable.[6] *J & J Marine*, 982 S.W.2d at 927. It is important to note, though, that the instant case presents the issue of jurisdictional veil-piercing, which involves different elements of proof than veil-piercing for the purpose of liability. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007). We do not assess certain issues, such as fraud and undercapitalization, which go to the issue of substantive veil-piercing. *See id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 425 (9th Cir. 1977)). Instead, we focus our analysis upon whether Lehtinen and Nationwide demonstrated that Cárdenas

---

[6] The applicability of alter ego doctrine is not limited to business entities which are registered as corporations; it is also possible to "pierce the corporate veil" of a limited liability company. *McCarthy v. Wani Venture, A.S.*, No. 01-04-00921, 2007 Tex. App. LEXIS 5059, *40-41 (Tex. App.—Houston [1st Dist.] June 28, 2007, pet. denied) ("[Appellant] has not offered, nor can we find, any judicial support for the proposition that existing state law doctrines of piercing the corporate veil should not be applied to LLCs."); *Cf. Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 500 (Tex. App.–Texarkana 2002) (distinguishing between partnerships and companies by explaining that "[a]lter ego is inapplicable with regard to a limited liability *partnership* because there is no veil that needs piercing") (emphasis added).

controls the internal business operations of Hidalgo Truck to a degree "greater than that normally associated with common ownership and directorship." *BMC Software*, 83 S.W.3d at 799.

An alter-ego analysis cannot be reduced to an authoritative list of discrete "elements" which may be tested. *Leon, Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 707 (Tex. App.–El Paso 1993, no pet.); *see also Eckardt v. Hardeman*, No. 03-98-00274-CV, 1999 Tex. App. LEXIS 450, *8 (Tex. App.–Austin 1999, pet. denied) (mem. op.) (not designated for publication) (providing useful analytical guidelines regarding whether an entity is merely the alter ego of an individual by reviewing the "total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes").

The burden to prove alter ego rests upon the party who is arguing that two parties are actually one entity. *BMC Software*, 83 S.W. 3d at 798; *see also J & J Marine*, 982 S.W.2d at 927 (stating that the two entities must be so related that the corporate entity is merely a "sham"). In the instant case, we believe Lehtinen met this burden.

**2. Sufficient Facts to Find Cárdenas is the Alter Ego of Hidalgo Truck**

To begin, Lehtinen provided testimony that he was induced to do business with Hidalgo Truck by Cárdenas's personal assurances that Cárdenas was "well-to-do" and there would be "no money problems with this type of business." We believe that this testimony, coupled with Lehtinen's later testimony that Cárdenas told him, "I will pay you

for your trucks," can reasonably be read to mean that Cárdenas was offering to serve as a guarantor of Hidalgo Truck's debts to Lehtinen, and this in turn, is an element that supports a finding of alter ego. *Cappuccitti v. Gulf Indus. Prods.*, 222 S.W.3d 468, 482 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (listing "representations that the individual will financially back the corporation" as a factor in alter ego analysis); *Tuscano v. Osterberg*, 82 S.W.3d 457, 467 (Tex. App.–El Paso 2002, no pet.) ("If an individual guarantees that he will be responsible for a corporate entity if it defaults on payments, this can serve as a basis for personal jurisdiction only if there is a showing that the guarantor offered his guarantee as an inducement to the plaintiff to enter into that contract.").

The court also heard Lehtinen testify that Cárdenas was so closely involved with Hidalgo Truck that he used its mailing address as his own and could almost always be reached by telephone when calling Hidalgo Truck's phone number. *See I & JC Corp. v. Helen of Troy L.P.*, 164 S.W.3d 877, 890 (Tex. App.–El Paso 2005, pet. denied) (finding accessibility by telephone number and mailing address of the business entity to be factors in alter-ego analysis). Lehtinen also testified that Hidalgo Truck disregarded the use of formal payment invoices. *See Stauffacher v. Lone Star Mud, Inc.*, 54 S.W.3d 810, 816 (Tex. App. 2001) (finding that a failure to follow corporate formalities is a factor in an alter-ego analysis).

Also, while the articles of organization did not distinguish between Cárdenas and Derr as managing members, Lehtinen's testimony revealed that in practice, Derr was Cárdenas's subordinate, and Cárdenas was in charge of the business. *See Cappuccitti*, 222 S.W.3d at 482 (exercising "complete control" over the business entity is a factor in an

11

alter-ego analysis). The trial court also heard evidence that Cárdenas negotiated with Lehtinen on behalf of Hidalgo Truck, was virtually always present on the premises, owned the real estate on which Hidalgo Truck was situated, and maintained an accountant at the facility to monitor the business at all times.

All of this evidence, which was before the trial court, is factually and legally sufficient to support an implied finding of alter ego. We cannot say that the broad and brief denials in Cárdenas's affidavit are "so contrary to the overwhelming weight" of the evidence provided by Lehtinen that it would be implausible for the trial court to have made an implied fact-finding of alter ego. *See Cain*, 709 S.W.2d at 176. Moreover, we cannot say that the evidence in the record is legally insufficient because it (1) does not reflect a complete absence of evidence of vital fact, (2) we are not barred from giving weight to the evidence, (3) the evidence does not amount to less than a mere scintilla, and (4) it assuredly does not establish conclusively the opposite of the vital fact. *See City of Keller*, 168 S.W.3d at 810. As such, we must affirm the factual sufficiency and legal sufficiency of the implied finding that Cárdenas is the alter ego of Hidalgo Truck.

A business which is registered in Texas and has filed suit in Texas, such as Hidalgo Truck, is amenable to Texas jurisdiction because it has purposefully availed itself of Texas law, and it can reasonably anticipate defending against suit in Texas. *See Shaffer v. Heitner*, 433 U.S. 186, 201-02 (U.S. 1977). Because Hidalgo Truck is Cárdenas's alter ego, the company's amenability to suit in Texas is imputed to him, and we therefore find he is reached by the Texas long-arm statute. *See Moki Mac*, 221 S.W.3d at 574. This satisfies the first prong of the personal jurisdiction test. *Id*. at 574.

12

**B.      Traditional Federal and State Due Process Guarantees**

Finding that Cárdenas is reached by the long-arm statute, however, does not end our jurisdictional inquiry. *Id.* We must also ensure that subjecting Cárdenas, a nonresident defendant, to Texas jurisdiction does not violate guarantees of due process under either state or federal law. *Id.* Specifically, we must find that Cárdenas has established minimum contacts with Texas and that the exercise of jurisdiction over him comports with traditional notions of fair play and substantial justice. *See id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). We believe that both of these tests are satisfied.

**1.      Minimum Contacts**

The minimum contacts to establish personal jurisdiction are met when the nonresident defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). There are three parts to a "purposeful availment" inquiry. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784-85 (Tex. 2005). First, only the individual defendant's contacts with the forum state, not the unilateral activity of another party or a third person, are relevant to the inquiry. *Id.* Second, the contacts relied upon must not be "random, fortuitous, or attenuated;" they must be purposeful. *Id.* Finally, the "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Id.* Furthermore, we note that when a defendant is from a different country, such as Cárdenas in this case, the minimum contacts analysis is particularly important because of the unique and onerous burden of defending a suit in a foreign legal system. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996) (citing *Asahi*

13

*Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

The nonresident's minimum contacts can either be "specific" or "general." *PHC-Minden*, 235 S.W.3d at 167 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *see also Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 324 (5th Cir. 1996). Specific jurisdiction exists when the plaintiff's cause of action arises out of or is related to the defendant's contacts with the forum, whereas general jurisdiction exists where the defendant's contacts in a forum are continuous and systematic such that jurisdiction may be exercised even if the cause of action does not arise from or relate to activities conducted within the forum state. *PHC-Minden*, 235 S.W.3d at 167. Lehtinen and Nationwide argue Cárdenas's contacts with Texas satisfy both specific and general jurisdiction. Based upon our previous finding of alter ego, we agree.

Because we have already upheld the trial court's finding that Hidalgo Truck is the alter ego of Cárdenas, we need not investigate Cárdenas's individual contacts with Texas. He is imputed the contacts of Hidalgo Truck, which—as a limited liability company registered in Texas—necessarily possesses the requisite minimum contacts. *See Shaffer*, 433 U.S. at 201-02. Moreover, the contacts meet the test for general jurisdiction, a test which is "more demanding" than one for specific jurisdiction because continuous—rather than single instance—contacts are required.[7] *CSR Ltd.*, 925 S.W.2d at 595.

---

[7] Although we believe that Cárdenas is subject to general jurisdiction in Texas because there is legally and factually sufficient evidence to support an implied finding that Hidalgo Truck is his alter ego, we note that even absent such a finding Cárdenas would still be subject to *specific* jurisdiction in Texas due to Lehtinen's allegation that Cárdenas committed the tort of conversion in Texas. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 810 (Tex. 2002) (noting that specific jurisdiction can be satisfied by a single purposeful act because it is the nature, not the quantity, of contacts that matters). Specifically, Lehtinen and Nationwide alleged in their petition that Hidalgo [Truck], Derr, and Cárdenas have converted Third Party Plaintiffs' property without consent, with intent to deprive Third Party Plaintiffs of their property, resulting in damages . . ." Lehtinen's testimony and affidavit, in which he repeated this allegation, served as evidence.

14

## 2. Traditional Notions of Fair Play and Substantial Justice

Finally, having found that Cárdenas has minimum contacts with the State of Texas, we must decide whether subjecting him to jurisdiction here would violate "traditional norms of fair play and substantial justice." *See Moki Mac*, 221 S.W.3d at 574. When evaluating whether traditional notions of fair play and substantial justice are implicated by a state's exercise of jurisdiction over a nonresident defendant, courts look to the following factors: (1) the burden on the nonresident to litigate in a different forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of disputes, and (5) the shared interest of the respective states furthering substantive social policies. *Asahi Metal*, 480 U.S. at 113; *Guardian Royal*, 815 S.W.2d at 228.

When we view the facts of the instant case through the prism of these five factors, we are unable to see how traditional norms of fair play and substantial justice would be significantly violated. First, the burden upon Cárdenas to litigate in Texas is not especially

Cárdenas countered with his own affidavit in which he explicitly denied having "committed any tort, in whole or in part, within the state of Texas." This left the trial court with two competing affidavits. We must affirm if we can discern legally and factually sufficient evidence in support of an implied finding by the trial court that the tort occurred, and thus, Cárdenas was subject to jurisdiction in Texas under the long-arm statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2) (Vernon Supp. 2007) (providing that committing a tort in whole or in part in Texas constitutes "do[ing] business" in Texas so as to trigger the operation of the long-arm statute). First, as to the factual sufficiency behind the implied finding, we cannot say that it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust" when the only counter-evidence offered was a single, broad sentence in Cárdenas' affidavit. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Second, as to the legal sufficiency of the affidavits and testimonial evidence, we cannot say that the evidence presented a complete absence of evidence of vital fact, that we are barred by rules of law or of evidence from giving weight to the evidence, that the evidence offered to prove a vital fact is no more than a mere scintilla, or that the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

15

onerous, given that Cárdenas owns a residence in McAllen.[8]  *See CSR Ltd.*, 925 S.W.2d at 595.  Moreover, although Cárdenas is a citizen of a foreign country, that foreign country, Mexico, borders Texas, and thus the travel burden is not particularly taxing.  *Id*.

The second element, Texas's interest in adjudicating the dispute, is apparent. *Guardian Royal*, 815 S.W.2d at 228.  Hidalgo Truck was registered in Texas, and therefore, in the words of the U.S. Supreme Court, the company "consented to being sued in th[e] State."  *See Shaffer*, 433 U.S. 186, 201-02.  With respect to the last two elements—the interests of the interstate judicial system and the shared interest of the respective states furthering substantive social policies—we again see no violations by conducting this litigation in Texas.  The only other plausible state for this litigation is Illinois, the home state of Lehtinen and Nationwide.  Although Illinois provides a plausible forum, there is no credible argument that Illinois provides a more appropriate forum than Texas given that Hidalgo Truck was registered in Texas, the parties apparently always met in Texas, and the conversion of the trucks is alleged to have taken place in Texas.  *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 810 (Tex. 2002).

It might also be argued that the litigation is better addressed in Mexico (Cárdenas argues this), but we find such an argument dubious.  Hidalgo Truck was in the business

---

[8] It is also worth noting that Cárdenas's ownership of property in Texas could be a factor in the purposeful availment analysis.  Jurisdiction in Texas may be found where the nonresident defendant possesses property in Texas because it is an "important" factor in determining whether the nonresident defendant availed himself of the protections of the state. *Beechem v. Pippin*, 686 S.W.2d 356, 361-63 (Tex. App.–Austin 1985, no writ).  Jurisdiction over a nonresident defendant may be exercised where the defendant enjoyed the benefits of Texas land ownership, received royalties from land, managed it, paid taxes, and demanded accounting. *Gurley v. Lindsley*, 459 F.2d 268, 278 (5th Cir. 1972).  Lehtinen raises these issues because of  Cárdenas's ownership of property in McAllen, but we decline to discuss them fully because we believe that Cárdenas would possess the requisite minimum contacts with Texas even absent his ownership of property.

16

of selling vehicles primarily (if not exclusively) to Mexican customers, and yet, Cárdenas chose not to register in Mexico. It seems apparent that he purposefully sought the advantages of Texas business organizations law, rather than the law of Mexico.[9] To allow him now to retreat to the Mexican legal system strikes us as the one thing that would in fact be violative of traditional norms of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (U.S. 1985). As the Supreme Court has said, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id.*

The only element of the traditional notions of fair play and substantial justice test that is arguably implicated in this suit is the consideration of the plaintiff's interest in obtaining convenient and effective relief, because Lehtinen, perhaps, can obtain his most convenient relief in his home state of Illinois. However, given that all of the relevant acts leading to the claim took place in Texas and that Hidalgo Truck's underlying suit against Lehtinen and Nationwide was filed in Texas, we believe that Lehtinen's most convenient relief is here in Texas, where all of the issues are already before the court.

## IV. Conclusion

Because we believe that Cárdenas, as Hidalgo Truck's alter ego, is within the scope of the long-arm statute and because we believe the exercise of jurisdiction over him would not offend traditional norms of fair play and substantial justice, we conclude that Cárdenas

---

[9] We emphasize that we doubt Cárdenas's decision to register across the border was "random, fortuitous, or attenuated." *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784-85 (Tex. 2005). For a worthwhile discussion of the issues that may compel a Mexican resident to register a company in the United States, *see* Robert M. Kossick, *The Rule of Law and Development in Mexico*, 21 ARIZ. J. INT'L & COMP. L. 715, 718-19 (2004) (discussing the decline in the number of Mexicans who have confidence in the nation's legal system).

17

is amenable to jurisdiction in Texas.  The trial court's order denying his special appearance

is AFFIRMED.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 13th day of March, 2008.