

## NUMBER 13-07-00623-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**AARON ANDREW JOINER,**                                                      **Appellant,**

**v.**

**COAST PAPER & SUPPLY**
**AND CAROL LYNN CARAVA,**                                              **Appellees.**

---

### On appeal from the 357th District Court
### of Cameron County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Garza**

Appellant, Aaron Andrew Joiner, complains in this accelerated interlocutory appeal that the trial court erred in granting special appearances in favor of appellees, Coast Paper & Supply ("Coast Paper") and Carol Lynn Carava.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon Supp. 2007); TEX. R. CIV. P. 120a; TEX. R. APP. P. 28.1.  By one

issue, Joiner contends that the trial court erred in granting the special appearances because Texas has general and specific jurisdiction over Coast Paper and Carol. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Coast Paper is a California corporation specializing in the sale of wholesale paper and janitorial supplies.[1] Carol is a California resident and the mother of David Ross Carava. The underlying lawsuits and ancillary claims pertain to disputes involving real and personal property transferred from Joiner Food Service, Inc. ("Joiner Food")[2] to DRC Distributors, Ltd., a Texas limited partnership.[3] *See generally Cameron Life Ins. Co. v. Pactiv Corp.*, No. 13-05-760-CV, 2007 Tex. App. LEXIS 6773 (Tex. App.–Corpus Christi Aug. 23, 2007, pet. denied) (mem. op.); *DRC Distrib., Ltd. v. Joiner*, No. 13-04-038-CV, 2006 Tex. App. LEXIS 1168 (Tex. App.–Corpus Christi Feb. 9, 2006, no pet.) (mem. op.); *Joiner v. Pactiv Corp.*, No. 13-04-580-CV, 2005 Tex. App. LEXIS 6364 (Tex. App.–Corpus Christi Aug. 11, 2005, pet. denied) (mem. op.).

---

[1] In its filings with the state of California, Coast Paper named Carol Carava as its chief executive officer and chief financial officer. In addition, David Carava was named as the secretary of the corporation.

[2] Joiner Food Service, Inc. is a Texas corporation owned and operated by appellant.

[3] DRC Distributors, Ltd. and DRC Management Company, Inc. are both Texas registered entities. In its filings with the Texas Secretary of State's Office, DRC Distributors noted that the name of its registered agent is David R. Carava and the address of the registered office of the partnership was 821 West Jackson Street, Harlingen, Texas 78550. In addition, DRC Management Company was named the general partner of DRC Distributors. In its filings, DRC Management Company used the same address for DRC Distributors's principal office. Moreover, DRC Management Company, in its 2002 Texas franchise tax public information report, named Carol Carava as the secretary and treasurer of the entity and David Carava as the owner and president. Subsequently, in its 2003 and 2006 Texas franchise tax public information reports, DRC Management Company provided the following address for its principal office: "11 Lawridge, Santa Cruz, CA 95060."

As the general partner of DRC Distributors, DRC Management Company owned a one percent interest in DRC Distributors for which it paid $10,000. David Carava, as a Class A limited partner, owned a ninety-eight percent interest in DRC Distributors for which he paid $980.00. Carol Carava, as a Class B limited partner, retained a one percent interest in DRC Distributors for which she paid $1,000,000.

**a. The First Lawsuit**

On May 23, 2000, DRC Distributors and Joiner Food entered into an asset purchase sale whereby Joiner Food agreed to sell certain real and personal property to DRC Distributors. *Cameron Life Ins. Co.*, 2007 Tex. App. LEXIS 6773, at *2. Joiner Food held a deed of trust securing the real property subject to the asset sale, and DRC Distributors was to make periodic payments on the real estate lien note. *Id.* at *3.

After DRC Distributors fell behind on the note, DRC Distributors and DRC Asset Management, Inc., formerly known as DRC Management Company, Inc., executed a deed in lieu of foreclosure (the "general warranty deed"), bill of sale, and a comprehensive mutual release effective December 9, 2002. *Id.* at *5; *see also Pactiv Corp.*, 2005 Tex. App. LEXIS 6364, at **2-3. As a condition of the release, DRC Distributors transferred back to Joiner Food the real and personal property sold along with amounts owed under the promissory note. In exchange, Joiner Food agreed to release any and all obligations under the transaction, as well as all other claims or disputes among the parties. In particular, the parties agreed to refrain from instituting any proceedings against each other related to this transaction. On December 20, 2002, Joiner recorded the December 9, 2002, general warranty deed in the Cameron County real property records. *See Cameron Life Ins. Co.*, 2007 Tex. App. LEXIS 6773, at **5-6; *Pactiv Corp.*, 2005 Tex. App. LEXIS, 6364, at *3.

On August 25, 2003, Joiner filed a petition for declaratory relief against DRC

Distributors,[4] DRC Management Company[5] (collectively the "DRC Parties"), and David, seeking to set aside the mutual release. *DRC Distrib., Ltd.*, 2006 Tex. App. LEXIS 1168, at *2. On October 6, 2003, a no-answer default judgment was rendered against the DRC Parties and David. *Id.* The DRC Parties and David filed a restricted appeal with this Court. *Id.* at **1-2. We reversed and remanded the no-answer default judgment, concluding that Joiner had failed to properly serve the parties with process. *Id.* at **7-8.

On remand, the DRC Parties and David counterclaimed for a declaratory judgment that the mutual release was in full force and effect and that Joiner had breached the mutual release and filed a motion for summary judgment.

**b. The Second Lawsuit**

Rather than filing a response to the motion for summary judgment filed by the DRC Parties and David, Joiner instituted a second lawsuit on October 26, 2006, against the DRC Parties, David,[6] and against two new parties: Coast Paper and Carol. In this lawsuit, Joiner alleged, among other things, that: (1) the mutual release was void ab initio; (2) DRC Distributors was the alter ego of DRC Management Company; (3) DRC Management Company was the alter ego of David Carava; (4) DRC Management Company was

---

[4] DRC Distributors filed a certificate of cancellation with the Texas Secretary of State's Office on July 14, 2003, stating that the Certificate of Limited Partnership was being cancelled due to the completion of the winding up of the limited partnership.

[5] On March 22, 2002, the State of Texas revoked DRC Management Company's charter to do business in Texas for non-payment of taxes. *See* TEX. TAX CODE ANN. § 171.301 (Vernon 2008). DRC Management Company's charter to do business in the State of Texas was subsequently reinstated on August 17, 2006.

[6] On November 8, 2007, the trial court, in response to a counter-petition filed by the DRC Parties and David, granted the DRC Parties and David declaratory relief pursuant to section 37.011 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.011 (Vernon 1997). The trial court also dismissed with prejudice all of Joiner's claims against the DRC Parties and David in the second lawsuit.

4

organized as a sham to perpetrate a fraud; and (5) the DRC Parties, David Cararva, Carol Carava, and Coast Paper are jointly and severally liable for $868,754.76 in compensatory damages for breach of contract and $1 million in compensatory damages for breach of warranty. Carol and Coast Paper filed separate special appearances and original answers on November 22, 2006.

On September 10, 2007, the trial court conducted a hearing on the special appearances filed by Carol and Coast Paper. On the same day, Joiner filed a first amended response to both special appearances, which included an affidavit that he executed himself. After hearing arguments from counsel, the trial court granted both special appearances. Subsequently, on October 9, 2007, Joiner filed his notice of accelerated interlocutory appeal challenging the trial court's granting of the special appearances filed by Carol and Coast Paper.[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7); TEX. R. CIV. P. 120a; TEX. R. APP. P. 28.1. This appeal ensued.

## II. STANDARD OF REVIEW

Because the question of a court's exercise of personal jurisdiction over a nonresident defendant is one of law, we review a trial court's determination of a special appearance de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)). The plaintiff bears the initial burden of pleading "sufficient allegations to bring a nonresident

---

[7] Generally, in an accelerated appeal, a party's notice of appeal must be filed within twenty days after the judgment or order is signed. TEX. R. APP. P. 26.1(b). However, the record reflects that this Court granted Joiner's motion to extend the deadline for filing his notice of appeal and that Joiner timely filed his notice of appeal within the amended appellate deadline. *See* TEX. R. APP. P. 26.3.

defendant within the provisions of the long-arm statute." *Id.* at 793. When a special appearance is filed, the nonresident defendant assumes the burden of negating all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793; *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.*, 82 S.W.3d 622, 628 (Tex. App.–Corpus Christi 2002, pet. dism'd w.o.j.).

In this case, Joiner asserts that Texas courts have personal jurisdiction over Coast Paper and Carol based on their relationship with David and the DRC Parties. When a plaintiff's assertion of jurisdiction depends on imputing the actions of a resident to a nonresident, the burden of proof shifts back to the plaintiff. *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) ("Texas law does not presume agency, and the party who alleges it has the burden of proving it.") (citing *Buchoz v. Klein*, 143 Tex. 284, 184 S.W.2d 271, 271 (Tex. 1944)); *BMC Software*, 83 S.W.3d at 798 (holding that "the party seeking to ascribe one corporation's action to another by disregarding their distinct corporate entities must prove this allegation"). When, as here, there are multiple defendants, we must test each defendant's actions and contacts with the forum separately. *Morris v. Kohls-York*, 164 S.W.3d 686, 693 (Tex. App.–Austin 2005, pet. dism'd). Joiner, therefore, bore the burden of both pleading and proving jurisdiction as to Coast Paper and Carol in this case.

When a trial court does not issue findings of fact or conclusions of law with its special appearance ruling, as in this case, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software*, 83 S.W.3d at 795. When the appellate record includes the reporter's and clerk's records, these implied findings are not

6

conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *Id.*

Moreover, in determining the special appearance, the trial court may refer to the pleadings, any stipulations made by and between the parties, any affidavits and attachments filed by the parties, discovery, and any oral testimony. TEX. R. CIV. P. 120a(3).

### III. ANALYSIS

In his sole issue on appeal, Joiner asserts that the trial court erred in granting the special appearances because he submitted legally and factually sufficient evidence establishing that Texas courts have general and specific jurisdiction over Carol and Coast Paper. Specifically, Joiner contends that general and specific jurisdiction were established by evidence showing that: (1) David and Carol acted as partners in a general partnership conducting business in Texas; (2) the DRC Parties were organized by Carol as a sham to perpetrate a fraud through intentional undercapitalization; (3) David was an agent for an undisclosed principal, Coast Paper, which paid him a salary of $15,000.00 per month; (4) the DRC Parties engaged in joint ventures with Coast Paper; (5) Carol sent Coast Paper employees to Texas to work on tasks for the DRC Parties; (6) Carol and David allegedly converted Joiner's property; and (7) no one has accounted for $2,163,490.09 that allegedly went missing.

Conversely, Carol and Coast Paper argue that Joiner has failed to present any issue for review. They further argue that Joiner failed to: (1) allege sufficient facts to invoke jurisdiction under the Texas long-arm statute; and (2) discharge his burden in proving his alter ego theory for purposes of establishing personal jurisdiction over both Coast Paper

7

and Carol.

## A. Appellate Review

At the outset of our analysis, we address the argument made by Coast Paper and Carol that Joiner failed to present an issue for appellate review. We disagree.

Joiner correctly notes that the trial court did not issue any findings of fact or conclusions of law accompanying the order granting Coast Paper's and Carol's special appearances. Moreover, Joiner specifically stated in his appellate brief that "[t]he trial court erred in granting Defendant's Special Appearance objecting to the jurisdiction of the trial court over the property and person of the Defendants, Coast Paper & Supply and Carol Lynn Carava, pursuant to Rule 120a, *Texas Rules of Civil Procedure*" (emphasis in original). Joiner proceeded to provide argument and authority to support its stated issue.

Coast Paper and Carol rely on *Martinez v. El Paso County*, 218 S.W.3d 841, 844 (Tex. App.–El Paso 2007, pet. dism'd) in arguing that Joiner failed to present an issue for this Court to review. The *Martinez* court noted that "[w]hen reviewing a civil matter, an appellate court has no discretion to consider an issue not raised in the appellant's brief, even if the ends of justice so require." *Id.* However, the *Martinez* court also noted that "[a]n issue presented in an appellant's brief is sufficient if it directs the attention of the appellate court to the error about which the complaint is made." *Id.* Because Joiner specified that he took issue with the trial court's grant of the special appearances filed by Coast Paper and Carol and because the record contains argument and authority addressing this issue, we conclude that Joiner has presented this Court with issues pertaining to general and specific jurisdiction for review. *See id.* ("Appellant's brief must

8

also contain a clear and concise argument containing appropriate citations to authority and to the record. This requirement is not satisfied by merely uttering brief conclusory statements, unsupported by legal citations.") (internal citations omitted).

**B. Due Process and Personal Jurisdiction**

A Texas court may exercise personal jurisdiction over a nonresident defendant only if jurisdiction is authorized by the Texas long-arm statute, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997), which permits Texas courts to exercise personal jurisdiction over nonresident defendants who are doing business in Texas.[8]  *BMC Software*, 83 S.W.3d at 795. Although the Texas long-arm statute lists activities that constitute "doing business," this list is not exclusive, and "section 17.042's broad language extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *BMC Software*, 83 S.W.3d at 795 (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760 , 762 (Tex. 1977)). Therefore, "the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations." *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

Under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, a Texas court may exercise personal jurisdiction over a nonresident defendant when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with "traditional notions of fair play

---

[8] Section 17.042 of the civil practice and remedies code provides a non-exclusive list of acts that constitute doing business in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997). Specifically, "a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." *Id.*

9

and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *BMC Software*, 83 S.W.3d at 795; *see* U.S. CONST. amend. XIV, § 1. "The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant which create a substantial connection with the forum state." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

A nonresident establishes minimum contacts with Texas by purposefully availing itself of the privileges and benefits inherent in conducting business in the state. *Moki Mac*, 221 S.W.3d at 575 ("[A] defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction") (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)); *Michiana*, 168 S.W.3d at 784 ("For half a century, the touchstone of jurisdictional due process has been 'purposeful availment.'"); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

There are three parts to the purposeful availment inquiry. *Michiana*, 168 S.W.3d at 785. First, only the nonresident defendant's contacts with the forum are considered and not the acts of a third person or another party. *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.'")). Second, the contacts must be purposeful and not "random, isolated, or fortuitous." *Id.* Finally, the nonresident defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.*

To determine whether the exercise of personal jurisdiction over a nonresident defendant comports with traditional notions of fair play and substantial justice, we consider,

10

when appropriate, the following: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Guardian Royal*, 815 S.W.2d at 231.

## C. General and Specific Jurisdiction

A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction—general and specific jurisdiction. *BMC Software*, 83 S.W.3d at 795-96. If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts. *Id.* at 796; *CSR Ltd.*, 925 S.W.2d at 595. In contrast, when specific jurisdiction is alleged, we focus the minimum-contacts analysis on the "relationship among the defendant, the forum[,] and the litigation." *Guardian Royal*, 815 S.W.2d at 228 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)); *see Moki Mac*, 221 S.W.3d at 585 (holding that there must be a substantial connection between the nonresident defendant's contacts and the operative facts of the litigation). Specific jurisdiction is established if the defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the forum. *Helicopteros*, 466 U.S. at 414, n.8; *see also CSR Ltd.*, 925 S.W.2d at 595.

Because the minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, a showing of substantial activities in the forum state is

11

required.  *Schlobohm*, 784 S.W.2d at 357.  General jurisdiction is premised on the nonresident having consented to jurisdiction through its continuous contact invoking the benefits and protections of Texas.  *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002).  This analysis focuses on the nature and quality of the contacts, as opposed to the quantity.  *Id.*  The contacts under general jurisdiction "should be such as to justify categorizing the defendant as a resident of this State."  *Schexnayder v. Daniels*, 187 S.W.3d 238, 243 (Tex. App.–Texarkana 2006, pet. dism'd w.o.j.).

**D. Discussion**

Joiner admitted at oral argument that the crux of his argument in support of Texas courts asserting personal jurisdiction over Coast Paper and Carol is premised primarily on an alter ego theory based on David's actions as director and officer of DRC Management Company and DRC Distributors.[9]

**1. Alter Ego Theory**

An individual's contacts with Texas on behalf of a business entity that is designed to limit individual liability do not ordinarily establish personal jurisdiction over the individual, but an exception is recognized for cases in which the trial court finds alter ego is implicated.  *Solow v. Century Assets Corp.*, 12 S.W.3d 512, 516 (Tex. App.–Beaumont 1999, no pet.); *J & J Marine, Inc. v. Ha Van Le*, 982 S.W.2d 918, 927 (Tex. App.–Corpus

---

[9] At the special appearance hearing, Joiner characterized his arguments as such:

> It's been alleged that David Carava and Carolyn Carava are personally liable for the debts of DRC.  It's been alleged that DRC Distributors is the alter-ego of DRC Management.  It's been alleged that DRC Management was organized as a sham to perpetrate a fraud.  It's been alleged that DRC Management is the alter-ego of David Carava.

At no point did Joiner contend that either of the DRC entities were the alter-ego of Carol or Coast Paper.  In addition, Joiner admitted that neither Coast Paper nor Carol were necessary parties to the underlying litigation.

12

Christi 1998, no pet.). Under the theory of alter ego, courts may disregard the formal registration of a company because there exists such unity between the company and the individual that the company ceases to be a separate entity. *In re Smith*, 192 S.W.3d 564, 568 (Tex. 2006).

Alter ego is a theory under which plaintiffs may pierce the corporate veil and hold individual officers, directors, and stockholders of a company personally liable.[10] *J & J Marine*, 982 S.W.2d at 927. It is important to note, though, that the instant case presents the issue of jurisdictional veil-piercing, which involves different elements of proof than substantive veil-piercing for the purpose of liability. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007). We do not assess certain issues, such as fraud and undercapitalization, which go to the issue of substantive veil-piercing. *See id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 425 (9th Cir. 1977)); *see also Gonzalez v. Lehtinen*, No. 13-06-441-CV, 2008 Tex. App. LEXIS 1889, at *13 (Tex. App.–Corpus Christi Mar. 13, 2008, no pet. h.) (mem. op.). Instead, we focus our analysis upon whether Joiner demonstrated that Carol controlled the internal business operations of the DRC Parties to a degree "greater than that normally associated with common ownership and directorship." *BMC Software*, 83 S.W.3d at 799.

An alter-ego analysis cannot be reduced to an authoritative or exclusive list of discrete "elements" which may be tested. *Leon, Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 707 (Tex. App.–El Paso 1993, no pet.); *see also Eckardt v. Hardeman*, No.

---

[10] The alter ego doctrine is not applicable "with regard to a limited liability partnership because there is no veil that needs piercing." *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 500 (Tex. App.–Texarkana 2002, no pet.). Because DRC Distributors is a limited partnership, we will focus on the relationship between DRC Management Company, David, Carol, and Coast Paper with respect to Joiner's alter ego theory.

03-98-00274-CV, 1999 Tex. App. LEXIS 450, at *8 (Tex. App.–Austin 1999, pet. denied) (mem. op.) (providing some guidelines for considering whether an entity is merely the alter ego of an individual, such as the "total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes").

The burden to prove alter ego rests upon the party who is arguing that the two parties are actually one entity. *BMC Software*, 83 S.W.3d at 798; *see also J & J Marine*, 982 S.W.2d at 927 (stating that the two entities must be so related that the corporate entity is merely a "sham"). If we find alter ego, then the company's amenability to suit in Texas is imputed to the individual. *See Moki Mac*, 221 S.W.3d at 574; *see also Gonzalez*, 2008 Tex. App. LEXIS 1889, at *19.

In making his alter ego contention, Joiner relies heavily on his contention that Carol organized the DRC Parties as a sham to perpetrate a fraud on creditors through intentional undercapitalization. However, intentional undercapitalization of the business entity is relevant to an argument of substantive veil-piercing, not jurisdictional veil-piercing. *See PHC-Minden, L.P.*, 235 S.W.3d at 174. Joiner further contends that because DRC Management Company's charter was forfeited on March 22, 2002, due to its failure to timely pay taxes to the State of Texas, and because Carol was an officer of the entity, she organized DRC Management Company with the intent to perpetrate a fraud. However, this contention, once again, goes to substantive veil-piercing, not jurisdictional veil-piercing.

14

*See id.*  It is also noteworthy that Carol stated in her affidavit that she did not control the day-to-day operations of the DRC Parties.  This statement undermines Joiner's implication that Carol controlled the internal business operations of DRC to a degree "greater than that normally associated with common ownership and directorship."  *See BMC Software*, 83 S.W.3d at 799.  We find that Joiner failed to meet his burden of proving his alter ego contention.  Therefore, the alter ego theory cannot serve as a basis for personal jurisdiction over Carol.  *See id.*; *see also Moki Mac*, 221 S.W.3d at 574 (noting that if a reviewing court finds alter ego, then the company's amenability to suit in Texas is imputed to the individual); *Eckardt*, 1999 Tex. App. LEXIS 450, at *8.

## 2. Personal Jurisdiction Over Carol Carava

Joiner also contends that Texas courts have personal jurisdiction over Carol based on her actions as the chief executive officer of Coast Paper and the secretary and treasurer of DRC Management Company.  Much of Joiner's argument pertaining to Carol addresses her potential liability as a corporate officer.  Joiner contends that:  (1) David and Carol, acting as partners of DRC Distributors, conducted business in Texas; (2) Carol organized the DRC Parties as a sham to perpetrate a fraud on the DRC Parties' creditors through intentional undercapitalization; (3) Carol and David converted his property; and (4) Carol regularly sent employees from California to Texas to work on tasks for the DRC Parties.  Based on these allegations, Joiner argues that Carol purposefully availed herself to the jurisdiction of Texas courts.[11]  We disagree.

---

[11] At the hearing on the special appearances, Joiner stated that "[a]s far as the liability that she [Carol] assumed, the jurisdiction the State has over her [is] because of the revocation of the corporate charter."

15

The record does not reflect that Carol purposefully availed herself to the jurisdiction of Texas courts. In fact, Carol executed an affidavit on November 22, 2006, *see* TEX. R. CIV. P. 120a(3), appearing to negate all the jurisdictional bases alleged by Joiner. Her affidavit provided the following, in relevant part:

- She is a resident of California and she has never been a resident of Texas.

- She has never done business in the State of Texas in her individual capacity.

- She was a shareholder in DRC Management Company and served as the secretary and treasurer of DRC Management Company.

- DRC Management Company and DRC Distributors were organized for a legitimate business purpose—supplying paper products and other items to retail establishments in South Texas—but ceased doing business at or about the time giving rise to Joiner's claims because the entities were wound up.

- She has traveled to Texas approximately five to six times, all of which were in her capacity as an officer of DRC Management Company. On some occasions, she brought David's daughter to visit him in Harlingen, Texas.

- In her capacity as secretary and treasurer of DRC Management Company, she assisted with payroll and, on one occasion, prepared W-2s. She did not help with day-to-day operations.

- She knew of the initial purchase of personal and real property from Joiner by DRC Distributors, but she never signed any of the relevant documents conveying the property, and to the extent that she participated in the negotiations, she did so in her representative capacity for DRC Management Company.

- She has never solicited business in Texas.

- She has never employed residents of the State of Texas as employees, agents, or representatives in her individual capacity other than to represent her in this lawsuit.

- She has not committed a tort, in whole or in part, in Texas in any capacity.

16

- She has never consented to the jurisdiction of Texas courts in her individual capacity.

Moreover, Carol noted that exercising jurisdiction over her person and property in this case would offend traditional notions of fair play and substantial justice because the proper jurisdiction for this proceeding is in California, and because litigation in Texas would be extremely expensive for her and would cause "substantial disruption to [her] professional and personal life in the event of a prolonged absence for litigation purposes."

In conjunction with his filing opposing Carol's special appearance, Joiner himself executed an affidavit echoing the contentions he has made on appeal. However, the record does not contain competent evidence either proving his conclusory allegations or refuting Carol's affidavit.

In determining whether Carol purposefully availed herself to the jurisdiction of Texas courts, we must focus on only her contacts with the forum, whether her contacts with Texas were purposeful and not "random, isolated, or fortuitous," and whether she sought "some benefit, advantage, or profit by 'availing' [herself] of [Texas] jurisdiction." *See Michiana*, 168 S.W.3d at 785. Joiner has not established any of these elements. Joiner relies heavily on David's actions as the chief executive officer of the DRC Parties in imputing jurisdiction to Carol. It is undisputed that David is a Texas resident, but we must focus on the contacts of the nonresident, Carol, as opposed to David's contacts with Texas. *Id.* Carol admitted to visiting Texas five or six times in her capacity as secretary and treasurer of DRC Management Company. *See Morris*, 164 S.W.3d at 696 ("The fiduciary shield doctrine protects a corporate officer or employee from the trial court's exercise of general jurisdiction when all of the individual's contacts with Texas were on behalf of the

17

employer."). Carol noted in her affidavit that on some of her trips to Texas, she brought David's daughter along for a family visit. *See Am. Type Culture Collection*, 83 S.W.3d at 807 (noting that we should focus on the nature and quality of the contacts, not the quantity). Because all of Carol's trips to Texas were in her capacity as an officer of DRC Management Company, and because many of her trips were family related, we cannot say that Carol's contacts with Texas were continuous and systematic in accordance with general jurisdiction principles. *See BMC Software*, 83 S.W.3d at 796; *CSR Ltd.*, 925 S.W.2d at 595. Furthermore, Joiner has not established that Carol sought some benefit, advantage, or profit from Texas in her individual capacity.

With respect to specific jurisdiction, we focus the minimum-contacts analysis on the "relationship among the defendant, the forum[,] and the litigation." *See Moki Mac*, 221 S.W.3d at 585. Carol admitted in her affidavit that as secretary and treasurer of DRC Management Company and DRC Distributors, she was aware of the asset purchase sale and the subsequent general warranty deed. *See Virtual Healthcare Servs., Ltd. v. Laborde*, 193 S.W.3d 636, 644 (Tex. App.–Eastland 2006, no pet.) (providing that "notice that [directors and officers of corporations] may be liable for corporate debts does not justify a conclusion that nonresident officers and directors could reasonably anticipate being called into a Texas court"). However, she denied signing the relevant paperwork conveying the real and personal property. Because Carol did not sign any of the documents at issue in the underlying dispute, and because the record does not suggest that Carol purposefully availed herself of the jurisdiction of Texas courts, we conclude that Joiner also has not established that Texas has specific personal jurisdiction over Carol.

18

*See Morris*, 164 S.W.3d at 694 (concluding that a nonresident should be "haled" into a Texas court only as a result of intentional activities).

Based on the foregoing, we conclude that Joiner failed to meet his burden in establishing that Carol had minimum contacts with Texas; therefore, the trial court's judgment granting Carol's special appearance is supported by legally and factually sufficient evidence.

### 3. Personal Jurisdiction Over Coast Paper

As previously mentioned, Joiner primarily premises his jurisdictional arguments pertaining to Coast Paper on an alter ego theory. Specifically, Joiner asserts that Texas courts have general and specific jurisdiction over Coast Paper because: (1) David was an agent for an undisclosed principal, Coast Paper, which paid him $15,000.00 per month; (2) DRC Management Company and Coast Paper engaged in joint ventures pertaining to product sales; and (3) Coast Paper employees were sent from California to Texas to work on tasks for the DRC Parties.

On November 22, 2006, Carol, acting in her capacity as president of Coast Paper, filed an affidavit on behalf of Coast Paper. In this affidavit, Carol stated, among other things, the following:

- Coast Paper has never done business in Texas.

- Coast Paper has never obtained a certificate of authority to do business in Texas.

- Coast Paper has never consented to the jurisdiction of Texas courts.

- Coast Paper has never employed residents of Texas as employees, agents, or representatives for Coast Paper to do business or represent it in Texas.

19

David performed consulting work for Coast Paper in California while he lived in Texas, but such work was done when David traveled to California.

- David was not an agent for Coast Paper, and his services as an officer of Coast Paper were performed in California.

- The DRC Parties and Coast Paper were, at all material times, separate and distinct entities; Coast Paper never commingled assets with the DRC Parties; and Coast Paper is not affiliated with the DRC Parties in any way.

- Coast Paper never paid salaries to employees of the DRC Parties for work done for the DRC Parties.

- Coast Paper was not a party to the underlying agreement of which Joiner complains.

- Coast Paper has never owned or leased property in Texas.

- Coast Paper has never been a party to litigation transpiring in Texas, prior to this lawsuit.

- Coast Paper has not committed any tort, in whole or in part, in Texas.

- Coast Paper does not have any continuing or systematic contacts with Texas, and Coast Paper has not purposefully availed itself of the benefits of Texas law.

- Joiner's claims do not pertain to any activity conducted by Coast Paper in Texas.

Moreover, Carol noted that exercising jurisdiction over Coast Paper in this case would offend traditional notions of fair play and substantial justice because jurisdiction is proper in California and the expense of litigating this lawsuit in Texas would "cause substantial disruption to Coast Paper's daily business functions in its place of business—California."

In his filing opposing Coast Paper's special appearance, Joiner attached an affidavit that was identical to the one used to attack Carol's special appearance. Again, this

affidavit echoed the issues Joiner has alleged on appeal.

At the hearing on the special appearances, the following exchange, which is central to our analysis pertaining to Coast Paper, occurred:

[Joiner's counsel]: Mr. Carava testified in his deposition that he was a full-time employee of Coast Paper and Supply. He was being paid $15,000 per month for his services by Coast Paper and Supply. He drew no money from DRC Distributors or the corporation. His sole income was from Coast Paper and Supply.

He testified that he split time between California and between Texas. He kept a residence in Texas. He traveled back and forth. When he was in Texas, he would conduct California business. When he was in California, he would conduct Texas business.

THE COURT: I guess the question is, though, what business did he conduct on behalf of Coastal [sic] in the State of Texas? That's the question.

[Joiner's Counsel]: Well—

THE COURT: He may have been employed by them, but what responsibilities or business did he conduct on their behalf in the State of Texas?

[Joiner's counsel]: One of the functions he handled on behalf of both organizations [Coast Paper and the DRC Parties] was the coordination of mutual purchases of products.[12]

THE COURT: Well, but my inquiry is specific. You know, at this point I'm trying to segregate them both because there is [sic] two different entities. So he may have had dual responsibilities at the time. You know, for that matter, he could have been an officer or of some other company in some other state. But the question is, from

---

[12] We note that the Texas and United States Supreme Courts have held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984)).

21

> the Court's inquiry here is, what acts, if any, did he conduct in the State of Texas for the benefit of Coastal [sic], the defendant, if you know?

[Joiner's counsel]:  Well, it would be our argument that the running of DRC was effectively an act for Coastal [sic]. He, in addition—well, he and his mother in addition to being officers of DRC were also officers and stockholders.[13]

THE COURT:  I understand that.

[Joiner's counsel]:  Was basically a family business.

THE COURT:  I understand that, but I guess, you know, without getting into what Coastal's [sic] nature of business was, let's assume they sold forklifts, you know, and did he make sales calls or sell forklifts? Did he sell forklifts in Texas? You know, that kind of thing. And I don't know, maybe you don't know the answer to the question, but that's kind of my inquiry right now as to that defendant, other than the fact that he was on their payroll.

[Joiner's counsel]:  The only way I can answer it is in his deposition he states that he did consulting work to Coastal [sic].

THE COURT:  Well, I understand that.

[Joiner's counsel]:  It was not pursued as to what, so I don't—I don't want to go outside of what he's got in his deposition because that's the only thing I have in the record that I can present to this Court as evidence.

Coast Paper's counsel countered by arguing that:

Coast Paper does not have, didn't have anything to do with the agreements that were reached that reconveyed this property back which is the basis of the lawsuit. So under specific jurisdiction—that's being asserted in this case by the plaintiff against or to try to get Coast Paper in this case is not based

---

[13] The Texas Supreme Court has also held that "[a] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders." *Id.* (quoting *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975)).

22

out of the contracts that they're claiming was [sic] induced by fraud or that was [sic] breached on a lien that was on this property when the property was reconveyed back to the plaintiff.

. . . .

With regard to the minimum contacts, under general jurisdiction, the only allegations that have been made or at least the ones that seem to have Coast Paper in Texas is that David Carava was a consultant for Coast Paper and Supply, and he did that while he was down in Texas. Well, the fact of the matter is, is that David Carava did do Coast Paper consulting work, but what he did was he used to go to California to find out what—basically, perform most of everything that he did when he was in California.

The record contains a transcript of David's deposition where he stated that he "would go out with some of the salesguys and [he] would counsel her [Carol] and advise her on the phone about different things. I was doing kind of all different kinds of jobs in California and when I was in Texas." David also testified that he was paid $15,000 per month by Coast Paper to do Coast Paper work, or whatever Carol believed to be Coast Paper work, and that the DRC Parties did not pay him. At the deposition, David admitted that he sometimes did California work—i.e. Coast Paper work—while he was in Texas.

Despite David's deposition testimony and Joiner's arguments made at the special appearance hearing, Coast Paper has negated all bases for jurisdiction raised by Joiner. Joiner bases Coast Paper's contacts with Texas on David's consulting work done in Texas and on alleged joint ventures between Coast Paper and the DRC Parties. The record does not support Joiner's contention that Coast Paper and the DRC Parties entered into any joint ventures. Furthermore, Joiner has not established how much work David did for Coast Paper while residing in Texas. Assuming *arguendo* that David was an employee of Coast Paper, the fact that Joiner failed to demonstrate what and how much work was done

23

in Texas on Coast Paper's behalf undermines any finding that Coast Paper had continuous or systematic contacts with Texas. *See BMC Software*, 83 S.W.3d at 796; *CSR Ltd.*, 925 S.W.2d at 595. With respect to the second prong of the general jurisdiction inquiry, Joiner alleges that Coast Paper's contacts with Texas are derived from David's consulting work done in Texas. Again, considering that Joiner was unable to adequately specify what and how much work was done in Texas on behalf of Coast Paper by David, his contacts with Texas on behalf of Coast Paper cannot be considered to be purposeful. *See Michiana*, 168 S.W.3d at 785. David's contacts with Texas on behalf of Coast Paper are random or isolated at best. *See id.* Finally, the evidence does not demonstrate that Coast Paper availed itself of Texas's jurisdiction for the purpose of deriving a benefit, advantage, or profit. *See id.*

With respect to specific jurisdiction, the record reflects that Coast Paper: (1) was not involved in the underlying asset sale; (2) has neither conducted business nor registered in Texas; (3) has not commingled assets with the DRC Parties; and (4) has not paid salaries to any employees doing work for the DRC Parties. Therefore, Joiner has not adequately established a "relationship between the defendant [Coast Paper], the forum[,] and the litigation." *See Moki Mac*, 221 S.W.3d at 585.

To the extent that Joiner asserts an alter ego theory to establish jurisdiction over Coast Paper, the record does not reflect that Carol, on behalf of Coast Paper, sent Coast Paper employees to Texas to work on tasks for the DRC Parties. The evidence does not indicate that the DRC Parties were formed to "conceal the involvement" of Coast Paper.

Moreover, the record does not reflect that David was an agent for or represented Coast Paper in Texas. As a result, Joiner has failed to meet his burden of proving his alter ego theory that Coast Paper availed itself to the jurisdiction of Texas courts.

Based on the foregoing, we conclude that Joiner has failed to establish that Coast Paper had minimum contacts with Texas; therefore, the trial court's judgment granting Coast Paper's special appearance is supported by legally and factually sufficient evidence. Joiner's sole issue is overruled.

## IV. Conclusion

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 29th day of July, 2008.

25